**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Coal Network, LLC, | ) | Case No. 22-10098 |
|  | ) |  |
| Debtor. | ) | Hon. Tracey N. Wise |
|  | ) |  |
|  | ) |  |

**ORDER CONFIRMING DEBTOR'S AMENDED
SUBCHAPTER V SMALL BUSINESS PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

This matter has come before the Court on the *Debtor's Amended Subchapter V Small Business Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 250], *Notice Regarding Filing of Amended Plan* [Docket No. 251], and *Notice of Immaterial Modification of Debtor's Amended Subchapter V Small Business Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 260] (collectively, the "Plan"), each filed by the debtor and debtor in possession, Coal Network, LLC (the "Debtor").  The Court having held a hearing on confirmation of the Plan on January 11, 2023 (the "Hearing"), and having further reviewed the Plan and the entire record of the Debtor's chapter 11 case, as to which the Court takes judicial notice, and being otherwise sufficiently advised, hereby finds, concludes, and **ORDERS** as follows:

1.    The terms of the Plan, with amendments and modifications, are incorporated by reference herein and are an integral part of this Confirmation Order.  A copy of the Plan with all amendments and modifications is attached hereto as **Exhibit A**;

2.     The Plan complies with all applicable provisions of sections 1129(a) and 1191 of title

11 of the United States Code (the "Bankruptcy Code") for a debtor under Subchapter V of the

Bankruptcy Code;

3.     The Plan has been proposed in good faith and not by any means forbidden by law;

4.     The Debtor, as proponent of the Plan, has complied with all applicable provisions of

the Bankruptcy Code;

5.     The Plan, *Order Fixing Time for Filing Acceptances or Rejections of Chapter 11*

*Subchapter V Plan, and Notice of Confirmation Hearing* [Docket No. 213], and Ballots have been

timely served on all necessary and appropriate entities.[1]  [Docket Nos. 213, 252].  Notice of the

Hearing, Plan, opportunity to object, and opportunity to vote in this case is adequate and

appropriate as to all entities affected or to be affected by the Plan and the transactions contemplated

thereby and no further or other notice is necessary;

6.     The Debtor has the ability to implement the Plan as of the Effective Date, including

the payment of administrative expenses and the commencement of payments to creditors in

accordance with the terms of the Plan;

7.     KeyBank National Association ("KeyBank") objected to confirmation on January 4,

2023 [Docket No. 256, Pages 1-2] which was subsequently withdrawn [Docket No. 261];

8.     Class 1, Class 2, and Class 3, as defined in the Plan, are Impaired.[2]  Class 1 cast no

ballots and is therefore deemed to reject the Plan, Class 2 voted to reject the Plan and Class 3 voted

to accept the Plan;

---

[1] "Entity and "entities" shall be given the meaning defined in section 101(15) of the Bankruptcy Code.

[2] All capitalized terms not otherwise defined herein shall be given the meaning ascribed to them in the Plan.

22613097.v5

9.      Notwithstanding the language of section 7.04(b) of the Plan, KeyBank's third-party release shall only be effective with regards to third-party claims that accrued between the Petition Date and the Effective Date;

10.     Based upon the proffered testimony and arguments at the Hearing, the Court finds that with regard to the third-party release of Coal Equity, Inc., its respective members, managers, shareholders, and officers (the "Released Parties") as identified in section 7.04(b) of the Plan: (a) there is a significant identity of interests between the Debtor and the Released Parties such that a suit against the Released Parties is akin to a suit against the Debtor due to the management and ownership structure of the entities; (b) the Released Parties have contributed substantial assets to the reorganization, including specifically, the Terminal described in section 7.02(b) of the Plan; (c) the releases contained in section 7.04(b) are essential to the reorganization, as the Released Parties would not support the Plan in its current incarnation absent the releases, and the commitment of the Released Parties to transfer the Terminal and support the reorganized Debtor are essential to the Plan's feasibility; (d) the classes of claims impacted by the release have generally voted to accept the Plan and have not objected to the Plan; (e) the Plan pays all or substantially all, or a substantial portion of, the claims in the classes impacted by the release; and(f) the ability of creditors to "opt out" of the release and pursue separate litigation against the Released Parties as set forth in section 7.02(b) of the Plan provides an opportunity for those claimants who choose not to settle to recover in full;

11.     The Court has reviewed the Plan and all supplements thereto, and concludes that the Plan is confirmable in its current form;

12.     The Plan is hereby CONFIRMED pursuant to section 1191(b) of the Bankruptcy Code;

22613097.v5

13.    The failure to include or specifically reference any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety;

14.    This Order is a final order and the period in which an appeal must be filed shall commence upon entry hereof;

15.    This Order shall be effective immediately upon its entry;

16.    The Bankruptcy Court shall retain jurisdiction over certain matters specifically identified in section 8.07 of the Plan.

22613097.v5

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Thursday, January 12, 2023**
**(tnw)**

TENDERED BY,

/s/ April A. Wimberg
James R. Irving
April A. Wimberg
Gina M. Young
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower, 101 South Fifth Street
Louisville, Kentucky 40202
Phone: (502) 587-3606
Email:  james.irving@dentons.com
        april.wimberg@dentons.com
        gina.young@dentons.com

*Counsel to the Debtor*

22613097.v5

# EXHIBIT A

## DKT 250 - Amended Chapter 11 Small Business Subchapter V Plan

## DKT 260 - Notice of Immaterial Modification Of Debtors Amended Subchapter V Small Business Plan Of Reorganization

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**

| | |
|---|---|
| In re: | CHAPTER 11 |
| COAL NETWORK, LLC | CASE NO. 22-10098-tnw |
| Debtor | Hon. Tracey N. Wise |

## DEBTOR'S AMENDED SUBCHAPTER V SMALL BUSINESS PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Dated:  December 28, 2022

Respectfully submitted,

*/s/ April A. Wimberg*
James R. Irving
April A. Wimberg
Gina M. Young
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Phone: (502) 587-3606
Fax:    (502) 540-2215
Email:  james.irving@dentons.com
        april.wimberg@dentons.com
        gina.young@dentons.com

*Counsel for the Debtor*

## Plan of Reorganization for Small Business Under Chapter 11

**Coal Network, LLC's Amended Plan of Reorganization ("Amended Plan" or "Plan") Dated December 28, 2022 and amending its Plan Dated November 15, 2022.[1]**

**Background.**

**A. Description and History of the Debtor's Business**

Coal Network, LLC ("Coal Network" or the "Debtor") is an Ohio limited liability company.

### The Debtor's History

The Debtor was founded by Ramesh Malhotra in 1980 and has operated as a turnkey solution provider for energy users. Specifically, the Debtor specializes in the trade of coal and blended coal products for the thermal, industrial and metallurgical markets within the United States and across the globe. In addition, the Debtor markets and disposes of coal combustion by-products.

### The Debtor's Capital Structure

The Debtor's only lender and Secured Creditor is KeyBank National Association ("KeyBank") based on a loan agreement between the Debtor and KeyBank dated February 25, 2020 ("Term Loan"). The Term Loan was for $1,800,000 and included a revolving line of credit of $10,000,000. The amount outstanding at the Petition Date was $3,384,085.82. The current secured amount outstanding as of November 3, 2022 on the Term Loan is $3,252,833.16 ("KeyBank Current Outstanding Balance").

### Events Leading to the Filing of the Chapter 11 Case

Until last year, the Debtor was always able to pay its Creditors as its debts became due. However, in 2021, several of the Debtor's suppliers failed to fulfill their supply contracts. The Debtor currently has a $2,037,891 judgment ("Judgment") against two suppliers, Pristine Energy, LLC and Virgie Clean Mining, LLC. In addition, several other suppliers failed to deliver coal under their supply contracts. As a result of these factors, KeyBank determined that the Debtor had exceeded its lending limit on the revolving credit provision of the Term Loan. KeyBank declared a default on or around February 2, 2022. At that time, KeyBank requested that a Chief Restructuring Officer ("CRO") be put in place. At the same time, Mr. Malhotra, who was serving as Chief Executive Officer ("CEO"), was diagnosed with cancer and suffered a stroke. Subsequent to the appointment of the CRO, KeyBank worked directly with the CRO in deciding which of the Debtor's vendors would be paid and which would not. The week before the Petition Date, the CRO stopped paying all vendors and accounts payable of Coal Network. As a result of the stop payment, suppliers and vendors stopped providing services to Coal Network. Additionally, the CRO approved a sweep by KeyBank of almost all of the Debtor's cash, making the Debtor unable to pay its debts.

### Events Since the Filing of the Chapter 11 Case

Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1182 and 1184 of the Bankruptcy Code. On August 18, 2022, the Court appointed the Subchapter V trustee. [Docket No. 20]. On August 25, 2022, the court entered an *Agreed Interim Order Authorizing the Use of Cash Collateral and Providing Adequate Protection* [Docket No. 100] (the "Interim Cash Collateral Order"). Subsequent to the entry of the Interim Cash Collateral Order, the Debtor engaged in significant negotiations and discovery

---

[1] All capitalized terms used herein and not otherwise defined have the meaning given to them in the Definitions attached hereto as **Exhibit A**.

with KeyBank regarding the permanent use of cash collateral.  Ultimately, the Debtor and KeyBank reached an agreement which is reflected in the *Agreed Final Order Authorizing the Use of Cash Collateral and Providing Adequate Protection* [Docket No. 181].  Also during the Chapter 11 Case, the Debtor engaged in significant negotiations with its key suppliers and customers to ensure no disruption in service and to ensure these parties that the Debtor still had the ability to execute on its agreements.  For the past two months, the Debtor has focused its efforts on renewing contacts, exploring new lines of business and investigating Causes of Actions that may provide additional funds to repay Claims.

The Debtor has reached new agreements with suppliers and customers for the post-Confirmation period.  The Debtor's future projections are based on these agreements.  Information concerning the Debtor's performance during the Chapter 11 Case is contained in monthly operating reports and projections are on file with the Bankruptcy Court.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all Creditors and Equity Interest Holders who do not accept the Plan will receive at least as much under the Plan as such Claim and Equity Interest Holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to the Plan as **Exhibit B**.

### C. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Plan Proponent (here, the Debtor) must also show that the Debtor will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.

The Debtor has provided projected financial information as **Exhibit C**.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by section 1191(d) of the Bankruptcy Code) for the five-year period described in section 1191(c)(2) of the Bankruptcy Code in line with the proposed distribution to Creditors.

The final Plan payment is expected to be paid in January 2028.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan under subchapter V of chapter 11 of the Bankruptcy Code proposes to pay Creditors of the Debtor from future income.

This Plan provides for:

| | |
|---|---|
| 1 | class of Priority Claims; |
| 1 | class of Secured Claims; |
| 1 | class of non-priority Unsecured Claims; and |
| 1 | class of equity security holders. |

This Plan also provides for the payment of Administrative and Priority Claims.  All payments under the Plan are to be made by the Subchapter V Trustee.  All Creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their Claims. Consistent with section 1187(c) of the Bankruptcy Code, the Debtor has not submitted a separate disclosure statement in connection with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| 2.01 | **Class 1** | The Secured Claim of KeyBank to the extent provided herein. |
| 2.02 | **Class 2** | All Allowed Claims entitled to priority under section 507(a) of the Code (except Administrative Claims under section 507(a)(2), and priority Tax Claims under section 507(a)(8)). |
| 2.03 | **Class 3** | All Unsecured Claims allowed under section 502 of the Code. |
| 2.04 | **Class 4** | Equity interests of the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| 3.01 | **Unclassified Claims** | Under section 1123(a)(1) of the Code, Administrative Claims and priority Tax Claims are not in classes. |
| 3.02 | **Professional compensation** | All Professionals seeking compensation for services rendered or reimbursement of expenses incurred, through and including the Effective Date, shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than thirty days after the Effective Date. |
| 3.03 | **Priority Tax Claims** | The Debtor has approximately $60,056.18 in outstanding debt owed to the Ohio Department of Taxation based on Commercial Activity Tax ("CAT") Claims [Claim No. 2], $45,590.77 of which is a Priority Claim. Concurrently with the filing of this Plan, the Debtor is making its CAT filings and will pay the Priority Claim portion within five days of entry of the Confirmation Order.<br><br>The Debtor is otherwise current in the filings of all tax returns and payment of all taxes due prior to the Petition Date. The Internal Revenue Service has not filed a proof of Claim in this Chapter 11 Case. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. |
| 3.05 | **Subchapter V Trustee fees and payments** | The Subchapter V Trustee shall be compensated at his standard hourly rate. Pre-Confirmation fees for the Subchapter V Trustee shall be paid over a period not to exceed six months from the Confirmation Date and shall continue to be compensated at his standard hourly rate for post-Confirmation services. |
| 3.06 | **Ordinary course Administrative Claims** | Ordinary course Administrative Claims shall include obligations incurred in the ordinary course of the Debtor's operations after the Petition Date and prior to the Effective Date, and include obligations for goods and services provided to the Debtor, as well as payroll and taxes. These claimants are not required to file a Claim with the |

Bankruptcy Court, but these Claims will be assumed, paid, and performed by the Debtor in the ordinary course of business in accordance with the terms of their respective agreements.

| | | |
|---|---|---|
| 3.07 | **Other Administrative Claims and bar date** | Except as provided in Article 3.02, 3.05 and 3.06 of the Plan, all other entities seeking payment of an Administrative Claim shall file their respective requests for allowance and payment thereof by no later than thirty days after the Confirmation Date. |
| 3.08 | **Administrative Claims** | Holders of Administrative Claims allowed under section 503 of the Code will be paid as follows:<br><br>• First, on the Effective Date or on such later date as the Court enters an order under sections 330 or 331 of the Bankruptcy Code allowing an Administrative Claim, holders of Allowed Administrative Claim shall be entitled to set off against such Claim any retainer or property of the estate then in their possession and provide any sums not previously paid under the Carve Out (as defined in the Interim and Final Cash Collateral Orders).<br><br>• Second, the Debtor shall, not less than five Business Days after the Effective Date, make a payment in the total amount of $150,000 to holders of Allowed Administrative Claims, to be divided among them Pro Rata, in proportion to the outstanding balance on each holder's Allowed Administrative Claim.<br><br>• Third, the Debtor shall, on the last day of the month that is three months after the Effective Date, and every month thereafter until all Administrative Claims are satisfied, make a payment of $25,000 to holders of Allowed Administrative Claims, to be divided among them Pro Rata, in proportion to the outstanding balance on each holder's Allowed Administrative Claim. |
| 3.08 | **Prospective quarterly fees** | Because the Debtor has elected to proceed under subchapter V of chapter 11 of the Code, no fees are required to be paid to the United States Trustee under 28 U.S.C. § 1930(a)(6) or (a)(7). |

## Article 4: Treatment of Claims and Interests Under the Plan

**4.01**   **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 – Secured Claim of KeyBank.** | ☒Impaired<br>☐Unimpaired | Class 1 arises from a certain Loan Agreement and Revolving Credit Promissory Note, both dated February 25, 2020. Pursuant to the *Agreed Interim Order Authorizing the Use of Cash Collateral and Providing Adequate Protection* [Docket No. 100], the Debtor acknowledged certain credit obligations to KeyBank the terms and conditions of which said |

obligations shall be deemed modified as set forth in this Plan.

Class 1 has a first-priority Lien on all of the Debtor's pre-petition Assets and accounts, secured by certain depository accounts and KeyBank's UCC financing statement [Claim 13, pg. 48-49].[2]

Class 1 shall be allowed in the amount of $3,200,000.00 (the "KeyBank Claim), minus (i) any adequate protection payments received between the filling of the Amended Plan and (ii) any sale proceeds of the Riverway permit/equipment sale (if received by KeyBank prior to the Effective Date of the Plan; otherwise, such proceeds shall be treated as an early payment of principal applied to the monthly installments in the inverse order of maturity, starting with the final installment). For the avoidance of doubt, KeyBank shall waive its outstanding attorneys' and other professionals' fees incurred from the inception of the KeyBank Loan to the Effective Date of the Plan.

The maturity date of the KeyBank Claim is three and a half years from Effective Date of the Amended Plan ("Life of Credit"), provided, however, that KeyBank may, at its election, accelerate the maturity date upon or any time after the 30th day following notice to Debtor or its counsel of the occurrence of an Event of Default (as defined in Section 10.01 of the Plan).

Security for the Debtor's First Amended Plan obligations shall include the existing liens on personal property and accounts, the replacement liens under the Final Cash Collateral Order, and a mortgage lien for the full balance on the Terminal, as defined below.

Debtor shall maintain its operating and related accounts at KeyBank until repayment in full of the KeyBank Claim.

Until the KeyBank Claim is paid in full, the sum of (i) the value of Debtor's collectible accounts receivable that are less than 90 days old plus (ii) Debtor's cash on hand plus (iii) the book value of Debtor's inventory shall not fall below:

• $2,250,000 at any time before July 1, 2023

• $1,750,000 at any time thereafter but before December 31, 2023

• $1,250,000 at any time thereafter but before July 1, 2024

• $750,000 at any time thereafter but before December 31, 2024

• $250,000 at any time thereafter for the remainder of the Plan Period (as to each of the foregoing periods, the "Minimum Working Capital").

Starting on the 20th day following the first full month after the Effective Date and each month until KeyBank is repaid in full, Debtor shall provide the Trustee with

---

[2] The UCC financing statement covers: "All of Debtor's business assets, whether now owned or hereafter acquired, and the proceeds and products thereof."

| | | an officer's certificate attesting to the Debtor's compliance with the Minimum Working Capital covenant during the preceding month and the validity of the information reported (consisting of the three working capital components that make up the Minimum Working Capital).  Starting on the first full fiscal quarter after the Effective Date and each quarter thereafter, Debtor shall provide KeyBank with a balance sheet report and profit and loss report summarizing Debtor's financial performance for the previous quarter and year to date. |
|---|---|---|
| **Class 2 – Priority Claims.** | ☒Impaired<br>☐Unimpaired | **Priority Claims shall be paid in full over a period of two years.**  Priority Claims include all Allowed Claims entitled to priority under section 507(a) of the Code (except Administrative Claims under section 507(a)(2), and priority Tax Claims under section 507(a)(8)).  A list of Creditors who hold Class 2 Claims and the amount of such Claims, adjusted for any critical vendor payments as of October 28, 2022, is attached as **Exhibit D.**<br><br>Payments to Class 2 shall be made quarterly with the first such payment due on the first day of the third month following the Effective Date.<br><br>Consistent with Article 5.01, the Debtor reserves the right to object to any Claim listed in Exhibit D. |
| **Class 3 – General Unsecured Claims.** | ☒Impaired<br>☐Unimpaired | Each holder of an Allowed Claim in Class 3 shall receive distributions equal to its Pro Rata share of 100% of the Reorganized Debtor's Net Income from its operations for a period of four years after the Effective Date.<br><br>Net Income for each year shall be determined based on a fiscal year ending December 31, beginning December 31, 2023.   The Debtor shall submit distributions for Class 3 Claims on an annual basis to the Subchapter V Trustee within 45 days of the end of each fiscal year.   Additionally, the Subchapter V Trustee will be provided audited financials and tax returns of the Debtor during the term of the Plan payments.<br><br>A five-year financial projection, including Net Income projections is attached hereto as Exhibit C. **Distributions on Class 3 Claims will be made from actual Net Income and not projections, so distributions may be higher or lower than projected.**  A list of Creditors who hold Class 3 Claims and the amounts of such Claims, adjusted for any critical vendor payments as of October 28, 2022, is attached as **Exhibit E.** |
| **Class 4 – Equity Interest of the Debtor.** | ☐Impaired<br>☒Unimpaired | If the Plan is confirmed under subchapter V of chapter 11 of the Bankruptcy Code, the Equity Interest Holder shall retain its ownership interest. Nothing in the Plan shall be deemed to prevent the holder of such interest from transferring, selling, or encumbering such interest in the Debtor. |

## Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claims:** | Holders of disputed Claims shall not be entitled to vote on the Plan. A disputed Claim is a Claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of Claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated. |
| | | The Debtor is still reviewing Claims and reserves the right to dispute any Claims filed for one year, or until the first Claim is first scheduled for a distribution, whichever date is later. |
| 5.02 | **Late Claims:** | Claims for which a proof of Claim is filed *after* the date set by the Bankruptcy Court for filing such Claims has passed shall be disallowed without need for any further notice, motion, or order. |
| 5.03 | **Delay of distribution on a disputed Claim:** | No distribution will be made on account of a disputed Claim unless such Claim is allowed. |
| 5.04 | **Settlement of disputed Claims:** | The Debtor will have the power and authority to settle and compromise a disputed Claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |
| 5.05 | **Treatment of *de minimis* distributions of Claims:** | If a distribution to be made to a Creditor holding an Allowed Claim would be $35.00 or less, notwithstanding any contrary provision of this Plan, no such distribution will be made. |
| 5.06 | **Unclaimed distributions:** | All unclaimed payments or distributions made on any Allowed Claim under the Plan shall revert to the Debtor after forty-five days of issuance by the Subchapter V Trustee and shall be forfeited as to the affected Creditor.  Any Creditor whose payment is forfeited under this provision will thereafter be treated as having a Disallowed Claim. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

All contracts that are executory, in whole or in part, which have not already been expressly rejected by the Debtor prior to or on the Confirmation Date, and which have not, or will not have expired by their own terms on the Confirmation Date, shall be treated as follows:

| | | |
|---|---|---|
| 6.01 | **Assumed Executory Contracts and unexpired leases** | The Debtor assumes the unexpired contracts or leases listed on **Exhibit F** (the "Assumed Contracts") as of the Effective Date and further acknowledges the amount required to cure the obligations associated with the assumption of the Assumed Contracts. |
| | | The Debtor proposes to cure those defaults by quarterly payments over two years.  These payments are further reflected in Exhibit C, the Debtor's financials.  Any party who does not file an objection on or before January 4, 2023 shall be deemed to have agreed that the sum in Exhibits F and payment terms as provided are in accordance with section 365(b) of the Bankruptcy Code. |
| | | Entry of the Confirmation Order shall constitute the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the Assumed Contracts. |

| 6.02 | **Rejection of Executory Contracts and unexpired leases** | All of the Debtor's Executory Contracts and unexpired leases that are not listed on Exhibit F as Assumed Contracts shall be deemed rejected as of the Confirmation Date. |
| | | A proof of Claim arising from the rejection of an Executory Contract or unexpired lease under this Article must be filed **no later than fifteen days** after the entry of the Confirmation Order.  Any such Claim for rejection damages shall be treated as a Class 3 Unsecured Claim.  The Debtor reserves the right to object to any Claim for rejection damages and all related rights.  The Debtor may file an objection to any such Claim as set forth in Article 5.01 of the Plan. |
| 6.03 | **Reservation of rights to Executory Contracts and unexpired leases** | The Debtor reserves the right to seek modification at any time prior to the Confirmation Date for authority to assume or reject any Executory Contract or unexpired lease in whole or in part. |

## Article 7: Means for Implementation of the Plan

| 7.01 | **Vesting of the Debtor's Assets** | The Debtor shall retain all property of the estate for use in its business. On the Confirmation Date, all Assets of the Debtor, including, but not limited to, all Causes of Action, will vest in and remain property of the Reorganized Debtor, free and clear of all Liens, Claims and interests, except as otherwise provided in the Plan. |
| | | Upon entry of the Confirmation Order by the Bankruptcy Court, the Debtor will have the duty and responsibility to continue its operations in the ordinary course of business as the Reorganized Debtor.  Upon the Effective Date, all actions contemplated or required in order to carry out the provisions of, and consummate, the Plan shall be fully authorized and approved in all respects.  As of the Effective Date, the Reorganized Debtor shall have the right to collect and use in the ordinary course all income and cash collateral, as defined in the Bankruptcy Code, derived from its operations.  The Reorganized Debtor will fund payments under the Plan in the ordinary course from post-Confirmation revenue unless otherwise specified herein. |
| 7.02 | **Management of the Reorganized Debtor** | Coal Equity, Inc. will remain the Debtor's sole member and manager. The managers and officers of the Reorganized Debtor will receive compensation for their services in an amount and form consistent with pre-petition practices, or as the Reorganized Debtor may otherwise  deem appropriate; however, no employee, director, or officer salary of the Debtor shall exceed $250,000 per year until the KeyBank Claim is repaid in full. |
| | | Consistent with pre-petition practices, Mr. Malhotra will be paid an annual salary of $250,000 (prior to the petition, his salary was $350,000), however, compensation in excess of $200,000 for Mr. Malhotra shall be deferred until repayment of the KeyBank Claim in full. Mr. Malhotra, who has completed all his cancer treatments, will continue with his duties as CEO and will manage all business generated through the terminal business.  Notwithstanding anything |

| | | herein to the contrary, the Reorganized Debtor may, after the Bankruptcy Court's entry of the Confirmation Order, hire, fire, and adjust compensation of its managers and officers in its sole discretion without application to or authority from the Bankruptcy Court or the Subchapter V Trustee. |
|---|---|---|
| 7.02 | **New value from the Equity Interest Holder** | Coal Equity, Inc. owns all membership interests in the Debtor and is the holder of the Class 4 Claim.  Not less than 180 days after the Effective Date, Coal Equity, Inc. will make a new equity contribution of deeding over a certain coal trans-loading facility located at 13125 Old U.S. Highway 23 (SR 757) in Calettsburg, Kentucky (the "Terminal"), which is specifically identified in the *Agreed Final Order Authorizing the Use of Cash Collateral* [Docket No. 180] (the "Final Cash Collateral Order"). Debtor shall execute a mortgage (the "Mortgage") to secure the KeyBank Claim in form substantially similar to the mortgage executed in connection with the Final Cash Collateral Order. In the event of any dispute concerning the appropriate format of the Mortgage, Debtor and KeyBank may request the Trustee's mediation and determination with respect thereto.<br><br>The Debtor and KeyBank shall cooperate to market and complete the sale of the Terminal (a) at the request of Debtor; or (b) upon the occurrence of an Event of Default.  Nothing herein is to be construed to imply that KeyBank could demand the Terminal be sold or marketed or specifically utilized without an occurrence of an Event of Default. |
| 7.03 | **Restructuring of Secured KeyBank Claim** | The interest rate shall be the Prime Rate  on the Effective Date of the Plan plus 1.5% (the "Plan Rate"), which rate shall be fixed until repayment of the KeyBank Claim. The KeyBank Claim plus interest at the Plan Rate shall be payable, in arrears, in equal monthly installments of principal and interest over the Life of Credit. |
| 7.04 | **Releases** | **a. Releases by the Debtor and certain Debtor-related parties.**<br><br>i.   *Release of Estate Professionals*.  On the Effective Date, the Debtor shall be deemed to have fully discharged and released its bankruptcy attorneys (Dentons Bingham Greenebaum LLP), special counsel (Stoll Keenon Ogden LLP), and financial advisor (Inspyre Advisory Partners, LLC) from any and all Claims existing as of the Effective Date or thereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Chapter 11 Case.  Each such Releasee so released shall be deemed to release and discharge the Debtor of similar Claims, provided, however, that the Debtor shall not be released from its obligation to pay Court-approved administrative expenses or from any claim related to gross negligence and willful misconduct.<br><br>ii.  *Release of the Debtor's Principal*.   On the later of the occurrence of (A) the Effective Date and (B) the payment of the equity contribution contemplated by Article 7.02 of the Plan, the Debtor shall be deemed to have fully discharged and released its sole member and manager, Coal Equity, Inc. from any and all Claims existing as of the Effective Date. |

iii.   *Release of KeyBank*. Upon the Effective Date, Debtor, Ramesh Malhotra, Coal Network, Inc., and Coal Equity, Inc. shall be deemed to have released KeyBank and each of its officers, directors, shareholders, attorneys, employees, agents, successors, heirs and assigns from any and all claims of whatever nature from the beginning of the world to the Effective Date, provided, however, the foregoing release shall not relieve KeyBank of any of its obligations under the Plan

**b. Releases of Non-Debtors by Creditors.**  On the later of the occurrence of (i) the Effective Date and (ii) the payment of the equity contribution contemplated by Article 7.02 of the Plan, all holders of Claims against the Debtor who do not opt out by timely voting to reject the Plan shall be deemed to have released and discharged Coal Equity, Inc., and KeyBank, and their respective members, managers, shareholders, and officers from any and all Claims based on or relating to the Debtor, the Debtor's restructuring, the Chapter 11 Case, or the transactions and events giving rise to any Claim or interest that is treated in the Plan or which otherwise arose before the Effective Date, provided, however, that Coal Equity, Inc., shall not be released from the obligation to make the new equity contribution contemplated by Article 7.02 of the Plan.  For an avoidance of doubt, neither this release, nor any other provision in the Plan provides a release to the CRO.

| 7.05 | **Preservation and vesting of Causes of Action** | Except as otherwise provided in Article 7.04 of the Plan, the Reorganized Debtor shall retain all rights of actions against others. The Reorganized Debtor, in its sole discretion and without further order of the Court or notice to parties in interest, has the exclusive right, but not the obligation, to investigate, institute, prosecute, abandon, settle, or compromise any of the identified Causes of Action in this section 7.05.  Except as otherwise provided in Article 7.04 of the Plan or as otherwise previously released, the Causes of Action include all claims and causes of action which the Debtor could bring prior to confirmation of the Plan, and include but are not limited to: causes of action arising under sections 542, 543, 544, 547, 548, 550 or 553 of the Bankruptcy Code; professional liability and related claims against the CRO; and breach of contract, accounts payable and commercial actions against customers of the Debtor which owe amounts to the Debtor.  If no action is taken to pursue a Cause of Action within one year subsequent to the Effective Date, it shall be deemed abandoned. |
| 7.06 | **Allocation of proceeds from Causes of Action** | The proceeds, net recovery after attorneys' fees and expenses, of any of the Debtor's Causes of Actions (the "COA Proceeds") shall be applied as provided herein.  First, the Debtor will create a reserve account of $150,000 ("Reserve Account") that will be available to make any Plan payment that would prevent or cure a Default as defined in Article 11 of the Plan.

After fulfilment of the Reserve Account, any COA Proceeds would then first be applied to any outstanding Administrative Claims, including those identified in Article 6.01 and Exhibit D, and then shall be applied to accelerate payments to Class 1, then to Class 2, and then shall be available to Unsecured Creditors in Class 3. |

| | | |
|---|---|---|
| | | Debtor shall use its best efforts and funds in the Reserve Account, to the extent necessary and appropriate, to collect the Pristine Judgment. Fifty percent (50%) of the gross recovery on the Pristine Judgment shall be paid to KeyBank upon collection, which sum shall be applied to the KeyBank Claim in the manner described in Section 4.01 of the Plan with respect to the early payment of principal.<br><br>The Debtor has not included any COA Proceeds in projected financials, Exhibit C. |
| 7.07 | **Continued Engagement of Professionals** | The Reorganized Debtor shall continue to retain Dentons Bingham Greenebaum, LLP, Inspyre Advisory Partners, LLC, or other such Professionals as may be necessary for the purposes of rendering services in connection with the implementation of the Plan, post-Confirmation administration, and the operation of the business of the Reorganized Debtor. |

## Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in sections 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.02 | **Effective Date** | The Effective Date of this Plan is the first Business Day following the date that is fourteen days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first Business Day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of the Debtor and Creditors named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity, whether or not the Creditor has voted to accept the Plan. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Kentucky govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Retention of jurisdiction** | Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Debtor requests that the Confirmation Order provide that the Bankruptcy Court retain exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan as is legally permissible, including but not limited to:<br>i.    Determination of the allowability of Claims and administrative expenses of the Debtor; |

| | | |
|---|---|---|
| | ii. | Resolution of controversies and disputes regarding the enforcement or interpretation of the Plan, the Confirmation Order, or the Bankruptcy Court's orders; |
| | iii. | Implementation, enforcement, and modification of the provisions of the Plan; |
| | iv. | Resolution of disputes concerning Disputed Claims; |
| | v. | Resolution of any disputes concerning whether a Creditor or party had sufficient notice of, among other things: (a) the Chapter 11 Case; (b) the Bar Date applicable to any Claim; (c) the hearing on Confirmation for the purpose of determining whether a Claim is discharged; |
| | vi. | Resolution of controversies and disputes regarding settlement agreements, orders, injunctions, judgments, and other matters entered or approved by the Bankruptcy Court in connection with any adversary proceeding, discovery, or contested matter in the Chapter 11 Case; |
| | vii. | Correction of any defect, cure of any omission, or reconciliation of any inconsistency in the Plan, Confirmation Order, or any other documents relating to the Plan, as may be necessary to carry out the purposes or intent of the Plan; |
| | viii. | Adjudication of any and all adversary proceedings, applications, contested matters, or other controversies or disputes in the Chapter 11 Case, pending as of the Confirmation Date, and determination of any and all Causes of Action, whether pending on the Confirmation Date or commenced on or after the Effective Date; |
| | ix. | Adjudication of any Causes of Action; and |
| | x. | Entry and implementation of such orders as may become necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated. |
| 8.08 | **Disbursing agent** | If the Plan is confirmed under section 1991 (a) or (b), unless otherwise ordered by the Bankruptcy Court, the Subchapter V Trustee shall serve as the disbursing agent pursuant to section 1194(b) of the Bankruptcy Code.    Upon completion of all Plan payments, the Subchapter V Trustee will submit a final report and account of the administration of the estate in accordance with section 1183(b)(2) of the Code. |

## Article 9: Discharge

9.01    **Discharge.  If** the Debtor's Plan is confirmed under section 1191(a) of the Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in section 1141(d)(6).

If the Debtor's Plan is confirmed under section 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first four years of this Plan.  The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first four years of the Plan, or as otherwise provided in section 1192 of the Bankruptcy; or (ii) excepted from discharge under section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Plan Voting

| | | |
|---|---|---|
| 10.01 | **Voting procedure** | ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DETERMINED BASED UPON THE BALLOTS OF THE CREDITORS HOLDING ALLOWED CLAIMS IN AN IMPAIRED CLASS THAT ACTUALLY VOTE ON THE PLAN. |
| 10.02 | **Classes entitled to vote** | All Creditors who have an Allowed Claim in an Impaired Class are entitled to vote to accept or reject the Plan. |
| 10.03 | **Requirements for class acceptance** | A class of Claims accepts the Plan if the Creditors holding Allowed Claims in the class casting votes in favor of the Plan hold (i) at least two-thirds in amount and (ii) more than one-half in number of Creditors holding Allowed Claims in the Class.  Any Creditor holding a Claim that does not vote will not be counted in the amount or number requirements for voting. |
| 10.04 | **Objection to Claim** | A Claim that has been objected to is not an Allowed Claim unless and until the Court rules on the objection.  The Court may temporarily set an amount for such a Claim to which an objection is pending for purposes of voting on the Plan.  The allowance or disallowance of any Claim for voting purposes does not necessarily mean that all or a portion of the Claim or interest will be allowed or disallowed for distribution purposes under the Plan. |
| 10.05 | **Ballots for voting** | Creditors holding Allowed Claims entitled to vote on the Plan have been sent a ballot (Official Form 314) with this Plan.  Creditors should read the ballot carefully and follow the instructions contained therein.  In voting to accept or reject the Plan, you must use only the ballot sent to you with the Plan.  Creditors entitled to vote must complete, sign, and return their ballots such that the ballot is actually received **before 5:00 p.m. ET on January 4, 2023**.  Ballots must be sent by email *or* mail to:<br><br>Dentons Bingham Greenebaum, LLP<br>Attn: April A. Wimberg<br>101 South Fifth Street, Suite 3500<br>Louisville, KY 40202<br>april.wimberg@dentons.com *and* tiffany.babcock@dentons.com |

## Article 11: Effect of Default

| 11.01 | **Event of default** | The failure of the Reorganized Debtor to fully pay when due any payment required under the Plan shall be an Event of Default.  An Event of Default shall also include: |
|---|---|---|

•        Conversion of the Bankruptcy Case to one administered under Chapter 7.
•        Debtor shall fail to maintain the Minimum Working Capital three times in any 12-month period.
•        The transfer of any of Debtor's assets with a liquidation value more than $50,000 outside the ordinary course of Debtor's business without the prior written consent of the Trustee.
•        The transfer of any of Debtor's assets with a liquidation value more than $100,000 outside the ordinary course of Debtor's business without the prior written consent of the Trustee and KeyBank.

| 11.02 | **Notice of default** | In the event of any alleged default under the Plan, any holder of an Allowed Claim under the Plan must give a written default notice to the Debtor and the Subchapter V Trustee, with copy to counsel of record for the Debtor, specifying the nature of the default.  The Debtor shall have thirty days to cure such default from the first date either the Debtor or its counsel receives the default notice, whichever is later.  If such default has not been cured within thirty days, then the holder of such Claim shall have the right to immediately enforce its rights, Liens, and security interests in compliance with Kentucky or other applicable law, including without limitation, foreclosure, repossession, and the sale of the collateral securing its Claim. |
|---|---|---|

| 11.03 | **Service of notices of default** | Except as otherwise specified, all notices and requests shall be given by any written means, including but not limited to electronic email, first class mail, express mail, or hand-delivery.  Notices shall be delivered as follows: |
|---|---|---|

To the Debtor:
Coal Network, LLC
7697 Innovation Way, Suite 100
Mason, OH 54040

Debtor's Counsel:
April A. Wimberg
Dentons Bingham Greenebaum, LLP
101 South Fifth Street, Suite 3500
Louisville, KY 40202
april.wimberg@dentons.com

Subchapter V Trustee:
Michael Wheatley
P.O. Box 1072
Prospect, KY 40059
mwheatleytr@gmail.com

## Article 12: Confirmation

12.01 **Confirmation.**  Pursuant to section 1191(a) of the Bankruptcy Code, consensual Confirmation occurs and the Bankruptcy Court shall confirm a plan under subchapter V if all Classes of Impaired Claims vote to accept the Plan and if all of the requirements of section 1129(a) of the Bankruptcy Code, other than paragraph (15) of that section  are  met.  Those requirements include the requirement imposed by section 1129(a)(7) of the Bankruptcy Code that Impaired Creditors receive at least as much as they would in a chapter 7 liquidation of the Debtor.  In order to demonstrate that Impaired Creditors will receive at least as much as they would in a chapter 7 case, the Debtor has attached a liquidation analysis as Exhibit B, reflecting that a liquidation would produce no distribution to general Unsecured Creditors prior to the costs of administration, and that general Unsecured Creditors could not be certain of payment under a chapter 7 liquidation analysis due to the uncertainty of the final pool of Claims.  In a chapter 7 case, the Debtor submits that liquidation proceeds would first be paid to the cost of liquidation of Assets and to Secured Creditors who have a Lien of Assets, then to the costs of administration of the chapter 7 case, and then of the Chapter 11 Case, and then to any Priority Claims, and finally any remaining funds would be distributed to Unsecured Creditors on a Pro Rata basis.

In a subchapter V case, it is not necessary that all classes of Impaired Claims vote to accept the Plan for the Bankruptcy Court to confirm the Plan.  Pursuant to section 1191(b) of the Bankruptcy Code, if all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than paragraphs (8), (10), and (15) are met with respect to a plan, the Bankruptcy Court, on request of the Debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable with respect to each class of Claims or interests that is Impaired under, and has not accepted, the plan.  Such "Cramdown Confirmation" is available in a case under subchapter V even if section 1129(a)(10) of the Bankruptcy Code, which requires acceptance by at least one class of Impaired Claims, is not satisfied, and no class of Creditors whose Claims are Impaired accepts the Plan.  The Debtor submits that the Plan does not discriminate unfairly with respect to any Impaired Class and is fair and equitable with respect to any such class that does not vote to accept the Plan and requests Confirmation pursuant to section 1191(b) of the Bankruptcy Code.

12.02 **Fair and Equitable.**  Section 1191(c) of the Bankruptcy Code establishes four requirements for a non-consensual plan to be "fair and equitable."

First, as to a class of Secured Claims, section 1191(c)(1) incorporates the fair and equitable standards from section 1129(b)(2)(A) of the Bankruptcy Code.  Section 1129(b)(2)(A) provides three alternatives for what is "fair and equitable" treatment for a Secured Claim.  First, the plan may provide for the retention by the holder of the Claim of the Liens securing the Claim and the payment to the holder of deferred cash payments totaling at least the allowable amount of the Claim of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in the property securing the Liens.  11 U.S.C. § 1129(b)(2)(A)(i).  Second, the plan may provide for the sale, subject to section 363(k), of the property securing the Liens, free and clear of the Liens, with the Liens to attach to the proceeds of such sale, and the treatment of such Liens under subsection (i) or (iii) of section 1129(b)(2)(A).  11 U.S.C. § 1129(b)(2)(A)(ii).  Third, the plan may provide for the realization by the holder of the Secured Claim of the "indubitable equivalent" of such Claim.  11 U.S.C. § 1129(b)(2)(A)(iii).

Second, for other Impaired classes, a plan is fair and equitable if, as of the effective date of the plan, it provides that (a) all of the debtor's projected disposable income for the three to five-year period (as fixed by the Bankruptcy Court) will be applied to make payments under the plan, or (b) the value of the property to be distributed under the plan during the three to five year period is not less than the projected disposable income of the debtor.  11 U.S.C. § 1191(c)(2).  A debtor is not required to satisfy the "absolute priority rule" applicable in other chapter 11 cases.

Third, the plan must provide that the debtor will be able to make all plan payments or that there is a reasonable likelihood that the debtor will be able to make the payments.  11 U.S.C. § 1191(c)(3)(A).

Finally, the plan must provide "appropriate remedies" to protect holders of Claims or interests if the payments are not made, including liquidation of nonexempt Assets.  11 U.S.C. § 1191(c)(3)(B).

---

Dated:  December 28, 2022                           Respectfully submitted,

X

X _____              Ramesh Malhotra
[Signature of the Plan Proponent]                  [Printed name]

X _____              /s/ April A. Wimberg
[Signature of the Attorney for the Plan Proponent]   [Printed name]
                                                   Dentons Bingham Greenebaum LLP
                                                   3500 PNC Tower
                                                   101 S. Fifth Street
                                                   Louisville, KY 40202
                                                   Telephone:  (502) 587-3719
                                                   E-mail:  april.wimberg@dentons.com

                                                   Counsel for the Debtor

## EXHIBIT A - DEFINITIONS

1.      "Administrative Claim" shall mean any Claim that is defined in 11 U.S.C. § 503(b) as being an "administrative expense" and granted priority under 11 U.S.C. § 507(a)(1) and including: (i) a Claim for any cost or expense of administration in connection with the Chapter 11 Case, including, without limitation, any actual, necessary cost or expense of preserving Debtor's Estate and of operating the business of Debtor incurred on or before the Effective Date; and (ii) all fees and charges assessed against Debtor's Estate under Chapter 123 of Title 28 of the United States Code.

2.      "Allowed Administrative Claim" shall mean an Administrative Claim for which the Bankruptcy Court has entered a Final Order allowing such Claim as an Administrative Claim, provided that a request for payment of an Administrative Claim is filed with the Bankruptcy Court within thirty (30) days after the Confirmation Date of the Plan.

3.      "Allowed Claim" shall mean a Claim allowable under § 502 of the Bankruptcy Code that (i) is allowed by Final Order, (ii) is scheduled as liquidated in amount, and not disputed or contingent, provided that a timely filed proofs of Claim shall supersede any scheduled amount of such Claim or (iii) proof of which is timely filed with the Bankruptcy Court on or before the date designated by the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules as the last date for filing proofs of Claim, and, as to (ii) or (iii), to which no objection to the allowance thereof has been or is made within the period of time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or Order of the Bankruptcy Court or to which objection has been timely filed and such Claim is allowed in such amount provided by Final Order.

4.      "Assets" shall mean all right, title and interest in and to property of whatsoever type or nature, owned by Debtor and to the proceeds, products, rents and profits from all of the foregoing.  Assets include, but are not limited to, property as defined in 11 U.S.C. § 541 (each identified item of property being herein sometimes referred to as an Asset).

5.      "Chapter 11 Case" shall mean the Debtor's case under Chapter 11 of the Bankruptcy Code.

6.      "Bankruptcy Code" or "Code" shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., as in effect from time to time.

7.      "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the Eastern District of Kentucky.

8.      "Business Day" shall mean a day other than a Saturday, Sunday or other day on which national commercial banks are authorized or required by law to close.

9.      "Causes of Action" shall mean all of Debtor's and Estate's Claims and rights, both in law and in equity, including but not limited to any and all Claims, demands, damages, and actions which Debtor and/or its Estate has or may assert including those specifically identified in

the Debtor's Amended Schedules [Docket No. 205-1] and avoidance actions of the Debtor to avoid transfers or to recover money or property pursuant to 11 U.S.C. §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, or 553, including applicable state law Claims.

10.     "Claim" shall mean (a) a right to payment, setoff or recoupment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including but not limited to potential and unmatured tort and contract Claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, setoff or recoupment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including but not limited to potential and unmatured tort and contract Claims), disputed, undisputed, secured or unsecured.

11.     "Confirmation" shall mean confirmation of the Plan pursuant to 11 U.S.C. § 1129, which shall occur upon entry of the Confirmation Order.

12.     "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

13.     "Confirmation Order" shall mean the Order of the Bankruptcy Court confirming the Plan with such modifications as may be agreed to or approved prior to the Effective Date by the Debtor.

14.     "Creditor" shall mean the owner or holder of a Claim.

15.     "Debtor" shall mean Coal Network, LLC.

16.     "Disallowed Claim" shall mean a Claim, or any portion thereof, that has (a) been disallowed by a Final Order; (b) withdrawn by a Creditor; (c) been scheduled as contingent, disputed or unliquidated as to which no proof of Claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court; or (d) not otherwise deemed timely filed under applicable law or the provisions of a confirmed Plan.  A Disallowed Claim shall not be entitled to distribution under the Plan.

17.     "Effective Date" shall mean the fifteenth day after the date of entry of the Confirmation Order, unless the Confirmation Order is stayed pending appeal, or, if a stay of the Confirmation Order is in effect, then the first day after the stay is vacated, or as soon thereafter as practicable.

18.     "Equity Interest Holder" shall mean Coal Equity, Inc.

19.     "Final Order" shall mean an Order or Judgment of the Bankruptcy Court as to which no review, rehearing, appeal or certiorari proceeding is pending, and as to which the time in which to seek review or rehearing or to file notice of appeal or petition for certiorari has expired,

or as to which such right has been waived, and which has not been reversed, modified, amended or stayed, and is thus conclusive as to all matters adjudicated thereby and is in full force and effect.

20.    "Impaired" shall mean any class of Claims that is impaired within the meaning of 11 U.S.C. § 1124.

21.    "Lien" shall mean charge against or interest in property to secure payment of a debt or performance of an obligation.

22.    "Net Income" shall mean the Reorganized Debtor's cash remaining after payments on all Unclassified Claims, Allowed Secured Claims, Class 2 Claims and ongoing company obligations including but not limited to costs of goods, payroll, operating expenses, debt service and leases, capital expenditures, taxes and the maintenance of an operating reserve to ensure the Reorganized Debtor has sufficient operating funds.

23.    "Petition Date" shall mean August 17, 2022, the date of the filing of the voluntary petition for relief by the Debtor under the Bankruptcy Code.

24.    "Plan" shall mean this Plan proposed by the Debtor and filed in this Chapter 11 Case and as it may be amended, modified or supplemented from time to time as provided herein.

25.    "Priority Claim" shall mean a Claim entitled to Priority pursuant to 11 U.S.C. § 507(a) of the Code (except administrative expense Claims under section 507(a)(2), and priority Tax Claims under section 507(a)(8)).

26.    "Professionals" shall mean Dentons Bingham Greenebaum, LLP in its capacity as counsel for the Debtor, Inspyre Advisory Partners, LLC in its capacity as financial advisor and all attorneys, accountants, appraisers, examiners, consultants and other professional persons properly retained by the Debtor and approved by the Bankruptcy Court under the Bankruptcy Code who performed professional services for or on behalf of the Debtor, from the Petition Date through and including the Effective Date, whose services and expenses are allowable by the Bankruptcy Court under 11 U.S.C. § 330.

27.    "Pro rata" shall mean proportionally so that the ratio of the amount of the distribution or payment made on account of an Allowed Claim to the amount of distribution or payment made on account of all Allowed Claims of the class or category in which the particular Allowed Claim is included, is the same as the ratio of the amount of such Allowed Claim to the total amount of all Allowed Claims in such class or category.

28.    "Reorganized Debtor" shall mean the Debtor subsequent to the Effective Date.

29.    "Secured Claim" shall mean (a) a Claim secured by a Lien on property of the Debtor which Lien is valid, superior, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in the Debtor's Chapter 11 Case, but only to the extent that such Claim does not exceed

the value of the Debtor's Assets (except, if the class of which such Claim is part makes the election provided for in 11 U.S.C. § 1111(b)(2), the entire amount of the Claim shall be a Secured Claim) and (b) a Claim provided for under the Plan as a Secured Claim.

30. "Secured Creditor" shall mean the owner or holder of a Secured Claim.

31. "Tax Claim" shall mean the Claim of any person for the payment of taxes (a) accorded priority pursuant to 11 U.S.C. § 507(a)(1) and (8), or (b) secured by valid Liens on Assets of the Debtor as to the Confirmation Date.

32. "Unsecured Claim" shall mean a Claim held by a Creditor of the Debtor, including deficiency Claims and Claims arising out of the rejection of Executory Contracts, other than Secured Claims, Administrative Claims, Priority Claims and Tax Claims.

33. "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

34. "Executory Contract" shall mean a contract under which unperformed obligations remain, or where both parties have continuing obligations to perform and shall encompass for the purposes of the Plan any unexpired leases.

35. "Subchapter V Trustee" shall mean Michael Wheatley [Docket No. 20].

## Exhibit B: Liquidation Analysis

| *Projected Liquidation Value of Debtor* | | |
|---|---|---|
| **Assets\*** | | |
| Cash Balance (as of 11/11/22) | $ | 3,007,588 |
| Accounts Receivable | $ | 1,344,704 |
| Equipment and office furniture | $ | 341,929 |
| Coal Inventory | $ | 7,500 |
| **Total** | $ | **4,701,720** |
| **Debtor Claims** | | |
| **Claims Paid Before Unsecured Creditors** | | |
| Secured Debt | $ | 3,252,833 |
| Administrative Claims | $ | 250,000 |
| Post-Petition Payables | $ | 361,279 |
| Priority Claims | $ | 799,386 |
| **Total** | $ | **4,663,497** |
| **Projected Liquidation Distribution to Priority Claims** | | |
| Available Funds | $ | 4,663,497 |
| *Distribution Percentage* | | *100%* |
| **General Unsecured Claims (GUCs)** | | |
| GUC Claims | $ | 8,589,836 |
| **Total** | $ | **8,589,836** |
| **Projected Liquidation Distribution to GUCs** | | |
| Available Funds | $ | 38,222.58 |
| *Distribution Percentage* | | *0.44%* |

\*Accounts receivables are conservatively discounted by 50% due to the fact
that customer accounts would be provided the right to set-off. Equipment
discounted by 25% representing liquidation value.

## Plan Exhibit C: Coal Network Projected Financials

| | 2023E | 2024E | 2025E | 2026E | 2027E |
|---|---|---|---|---|---|
| Sales from Operations | $38,248,250 | $41,457,330 | $44,944,158 | $48,733,419 | |
| Sales from Other Businesses | $1,458,800 | $1,312,920 | $1,312,920 | $1,312,920 | |
| **Total Sales** | **$39,707,050** | **$42,770,250** | **$46,257,078** | **$50,046,339** | |
| | | | | | |
| Cost of Goods | $35,172,030 | $38,181,662 | $41,456,948 | $45,021,963 | |
| **Gross Margin** | **$4,535,020** | **$4,588,588** | **$4,800,130** | **$5,024,376** | |
| | | | | | |
| **Operating Expenses** | | | | | |
| Salaries | $1,247,600 | $1,397,312 | $1,467,178 | $1,496,521 | |
| Benefits | $273,777 | $306,631 | $321,962 | $328,401 | |
| Shared Labor Cost | $91,000 | $95,550 | $100,328 | $102,334 | |
| Terminal / Dock Worker Expense | $324,000 | $340,200 | $357,210 | $364,354 | |
| Sales Travel Expense | $136,000 | $140,080 | $144,282 | $148,611 | |
| Insurance Premiums | $84,000 | $88,200 | $92,610 | $94,462 | |
| Administrative Expenses | $110,000 | $113,300 | $116,699 | $120,200 | |
| Rent | $50,136 | $50,136 | $50,136 | $50,136 | |
| Tax Services | $77,092 | $78,955 | $81,323 | $83,609 | |
| Advisory Services | $80,000 | $80,000 | $9,000 | $9,000 | |
| Legal Services | $150,000 | $150,000 | $50,000 | $25,000 | |
| **Total Operating Expenses** | **$2,623,605** | **$2,840,363** | **$2,790,728** | **$2,822,628** | |
| | | | | | |
| **Chapter 11 Disbursements** | | | | | |
| Secured Claim | $1,069,229 | $1,069,229 | $1,069,229 | $534,615 | |
| Executory Contracts Assumed | $285,876 | | | | |
| Priority Claims | $399,693 | $399,693 | | | |
| GUC Claims | | $112,140 | $118,378 | $596,260 | $778,087 |
| Subchapter V Trustee | $3,000 | $5,000 | $5,000 | $5,000 | |
| **Total Chapter 11 Disbursements** | **$1,757,798** | **$1,586,062** | **$1,192,608** | **$1,135,875** | |
| | | | | | |
| **TOTAL EXPENSES** | **$4,381,403** | **$4,426,426** | **$3,983,336** | **$3,958,503** | |
| | | | | | |
| Earnings Before Taxes | $153,617 | $162,162 | $816,795 | $1,065,873 | |
| Tax Expense | $41,476 | $43,784 | $220,535 | $287,786 | |
| **Net Income** | **$112,140** | **$118,378** | **$596,260** | **$778,087** | |

**Plan Exhibit D: Class 2 Creditors**

| Creditors Holding Priority Claims | POC Filed | Priority Portion of Claim | Current Claim Amount* |
|---|---|---|---|
| Alliance Coal, LLC | Claim 11 | $ 107,596.96 | $ 76,557.01 |
| Gibson County Coal | Claim 12 | $ 82,812.27 | $ 51,772.32 |
| Blackhawk Coal Sales, LLC | Claim 1 | $ 814,545.00 | $ 602,539.93 |
| Gerald Quitter | Claim 9 | $ 15,150.00 | $ 15,150.00 |
| Haverhill Coke Company | Claim 8 | $ 10,275.23 | $ 8,385.23 |
| Jewell Coke Company LLP | Claim 7 | $ 48,303.41 | $ 44,981.21 |
| Total | | | $ 799,385.69 |

*Priority portion minus critical vendor payments as of 10/28/2022

## Plan Exhibit E: Class 3 Creditors

| Unsecured Creditors | POC Filed | Unsecured Portion of Claim | Current Claim Amount* |
|---|---|---|---|
| A&B Contracting, LLC | No | $ 40,776.97 | $ 26,165.26 |
| American Commercial Barge Line | No | $ 125,744.00 | $ - |
| Alfred Rice Co Inc. | No | $ 2,095.94 | $ 2,095.94 |
| Appalachia Carbon Enterprise, LLC | No | $ 37,187.20 | $ 11,968.58 |
| Arcosa LW BR, LLC | Claim 14 | $ 3,034,521.45 | $ 3,034,521.45 |
| Assured Partners | No | $ 14,750.00 | $ - |
| Beechwood Coal LLC | TBD | $ 271,453.56 | $ 271,453.56 |
| Berner Trucking Inc | Claim 5 | $ 87,891.38 | $ 87,891.38 |
| Blackhawk Coal Sales, LLC | Claim 1 | $ 287,605.80 | $ 287,605.80 |
| Boyd Company | No | $ 3,242.01 | $ 915.20 |
| BWC Trucking Co. | No | $ 4,340.91 | $ 4,340.91 |
| Camelot Coal Co. | No | $ 203,240.40 | $ - |
| CEMEX Construction Materials Atlantic, LLC | Claim 15 | $ 3,881,525.18 | $ 3,881,525.18 |
| Comdoc Inc | No | $ 160.42 | $ 160.42 |
| Coshocton Trucking, Inc | Claim 3 | $ 69,406.28 | $ 69,406.28 |
| Crouse Corp. | No | $ 900.00 | $ 900.00 |
| FORE LLC | No | $ 2,998.59 | $ 2,998.59 |
| Gentry Mountain Mining, LLC | Claim 17 | $ 448,134.50 | $ 248,134.50 |
| Gerald Quitter | Amended Claim 9 | $ 376,752.87 | $ 376,752.87 |
| Haverhill Coke Company | Claim 8 | $ 3,166.10 | $ 3,166.10 |
| Jewell Coke Company LLP | Claim 7 | $ 69,268.91 | $ 69,268.91 |
| Kentucky Employers' Mutual Insurance Proof of Claim | Claim 4 | $ 8,114.49 | $ 8,114.49 |
| Key Bank National Association | Claim 13 | $ 1,403,152.68 | $ 153,152.68 |
| Louisville Gas and Electric Company & Kentucky Utilities Company** | Yes | $ - | $ - |
| Marquette Transportation Co., LLC | No | $ 151,586.80 | $ - |
| McCloskey | No | $ 18,910.00 | $ 18,910.00 |
| Merschman Fertilizer, LLC | No | $ 23,482.13 | $ - |
| MS2 Data Solutions | No | $ 17,000.00 | $ 17,000.00 |
| Phil Flinner Trucking Ltd. Proof of Claim | Claim 6 | $ 13,120.41 | $ 13,120.41 |
| SGS North America, Inc. | No | $ 267.80 | $ 267.80 |
| Verizon Wireless | No | $ 331.69 | $ 0.00 |
| **Total** | | | **8,589,836.31** |

*Unsecured portion minus critical vendor payments, sales adjustments, or agreements as of 10/28/2022

**Represents negotiated amended claim to be filed

Case 22-10098-tnw   Doc 277   Filed 01/12/23   Entered 01/13/23 00:30:03   Desc Main
Document   Page 33 of 47

Case 22-10098-tnw   Doc 250-6   Filed 12/28/22   Entered 12/28/22 16:21:41   Desc
Exhibit F - Pre-Petition Executory Contracts Assumed   Page 1 of 2

## Plan Exhibit F: Pre-Petition Executory Contracts Assumed

| Party to Agreement | Address | CN Order # | Client Order # (Reference) | Claim Outstanding on | 503(b)(9) Claim | Remaining Claim |
|---|---|---|---|---|---|---|
| AEP General Resources Inc. | 1 Riverside Plaza Columbus, OH 43215 | 21069 | 02-40-22-001 Amos | $ 0.00 | $ 0.00 | $ 0.00 |
| Alliance | 1717 South Boulder Avenue Suite 400, Tulsa, OK 74119 | 13271 | Buzzi (Chatt) | $ 324,962.83 | $ 107,596.96 | $ 217,365.87 |
| Arcosa LW BR, LLC** | 201 Industrial Street South Livingston, AL 35470 | SO 21032 | Brooks | $ 0.00 | $ 0.00 | $ 0.00 |
| Arcosa LW BR, LLC** | 201 Industrial Street South Livingston, AL 35470 | SO 20117 | New Orleans | $ 0.00 | $ 0.00 | $ 0.00 |
| Associated Terminals, LLC | 9100 Safety Drive Convent, LA 70723 | PO 13219 | Aggregate Transloading and Storage Agreement | $ 6,035.00 | $ 0.00 | $ 6,035.00 |
| Gibson County (Alliance) | 1717 South Boulder Avenue Suite 400, Tulsa, OK 74119 | PO 13273 | for Arcosa Brooks | $ 145,287.27 | $ 82,812.27 | $ 62,475.00 |
| Louisville Gas and Electric Co. and Kentucky Utilities Co. | 220 West Main Street Louisville, KY 40232 | SO 22006 | LGE-KU J22014 (CCU) | $ 0.00 | $ 0.00 | $ 0.00 |
| Louisville Gas and Electric Co. and Kentucky Utilities Co. | 220 West Main Street Louisville, KY 40232 | SO 22018 | | $ 0.00 | $ 0.00 | $ 0.00 |
| Louisville Gas and Electric Co. and Kentucky Utilities Co. | 220 West Main Street Louisville, KY 40232 | | Purchase Order J20024, dated October 30, 2020 (amended by letter agreements dated December 28, 2021 and April 14, 2022), by and between Sun Energy, Coal Network, and LG&E/KU | $ 0.00 | $ 0.00 | $ 0.00 |
| Riverway South, Inc. | P.O. Box 11188 Lexington, KY 40574 | Permit Operating Agreement | | $ 0.00 | $ 0.00 | $ 0.00 |
| Sun Energy Group, LLC | 2701 W 1100 South Huntingburg, IN 47542 | SO 21068 Sun-OVEC marketing Agreement | | $ 0.00 | $ 0.00 | $ 0.00 |

*Claim as of 10/28/2022

**For an abundance of clarity, Arcosa LW BR, LLC's contract, CN Order No. SO 19032 associated with Proof of Claim No. 14, is not being assumed.

22520191.v3

22520191.v3

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## ASHLAND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Coal Network, LLC, | ) | Case No. 22-10098-tnw |
|  | ) |  |
| Debtor. | ) | Hon. Tracey N. Wise |
|  | ) |  |

## NOTICE OF IMMATERIAL MODIFICATION OF DEBTOR'S AMENDED SUBCHAPTER V SMALL BUSINESS PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

The Debtor and Debtor In Possession Coal Network, LLC (the "Debtor"), by and through undersigned counsel, modifies the *Debtor's Amended Subchapter V Small Business Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 250] (the "Plan") as set forth herein:

1. Pursuant to the Plan, the Debtor seeks to assume under section 365 of the Bankruptcy Code that certain Aggregate Transloading and Storage Agreement, dated May 6, 2021 (the "Storage Agreement"), by and between the Debtor and Arcosa LW BR, LLC ("Arcosa"). [Docket No. 250-6]. The Debtor scheduled the proposed cure amount as $0.00. Arcosa informally objected to the proposed cure amount on the grounds that there was alleged contamination of some aggregates and the terms of the Storage Agreement require that Arcosa be allowed credits for any amounts owed by the Debtor to Arcosa for deficient aggregates. Arcosa filed a Proof of Claim [Claim No. 14] (the "Arcosa Proof of Claim") alleging $150,944.35 in production and carrying cost damages and $31,855.01 in lost profit damages under the Storage Agreement. The Debtor has resolved Arcosa's objection to the assumption of the Storage Agreement and the amount owed by the Debtor to Arcosa for alleged deficient aggregates. Arcosa consents to the Debtor's assumption of the Storage Agreement and, notwithstanding anything in the Plan or the Confirmation Order to

22619329.v4

the contrary, in accordance with the terms and conditions of the Storage Agreement, Arcosa shall be entitled to an immediate credit in the amount of $10,000 (the "Credit") to be applied by Arcosa to its payment obligations arising under the Storage Agreement.  The portion of the Arcosa Proof of Claim related to the Storage Agreement shall be revised to $10,000 and deemed satisfied, and the Debtor and Arcosa shall work in good faith to resolve other questions the Debtor has with regard to the remainder of the Arcosa Proof of Claim.  Nothing in the Confirmation Order shall prevent the Debtor from seeking indemnification from any third-parties with respect to the Credit or any other portion of the Arcosa Proof of Claim.

2.    Clarification to Section 4.01 of the Plan: the amount of the KeyBank Claim is the full amount outstanding on the Loan Agreement at the Effective Date after application of (i) interest and principal paid by the adequate protection payments, (ii) the proceeds of the Riverway permit/equipment transaction referenced in Docket No. 253, and (iii) the proceeds of any other pre-Effective Date sale of KeyBank's Collateral.[1]

3.    Clarification to Section 7 of the Plan:

a.    Section 7 contains two subsections which are both titled 7.02.  [Docket No. 250, Pages 9-10].  For the avoidance of doubt, the section titled "Management of the Reorganized Debtor" shall be deemed to be section 7.02(a) and the section titled "New value from the Equity Interest Holder" shall be deemed to be section 7.02(b);

b.    Clarification to Section 7.02(a): the Reorganized Debtor may, after the Bankruptcy Court's entry of the Confirmation Order, hire, fire, and adjust compensation of its managers and officers in its sole discretion without application to or authority from the Bankruptcy Court or the Subchapter V Trustee, except that, (i) no officer salary of the

---

[1] For additional clarity, the Debtor submits that no other sale is being contemplated or considered.

2

Debtor shall exceed $250,000 per year until the KeyBank Claim is repaid in full, and (ii) compensation in excess of $200,000 for Mr. Malhotra shall be deferred until the KeyBank Claim is repaid in full.

c.    Clarification with respect to Section 7.02(b): The new value contribution from Coal Equity, *i.e.*, the conveyance of the Terminal to Debtor, shall be concluded within 180 days of the Effective Date.

d.    Clarification with respect to Section 7.03 of the Plan: "Prime Rate" as used in Section 7.03 of the Plan shall be determined in accordance with the prime rate as published periodically in the Wall Street Journal. Available at https://www.wsj.com/marketdata/bonds.

e.    Section 7.04(a)(ii) of the Plan, among other things, references "the payment of the equity contribution contemplated by Article 7.02 of the Plan," [Docket No. 250, Page 10]. For the avoidance of doubt, this provision shall be modified to refer to Article 7.02(b).

f.    Section 7.04(b) of the Plan, among other things, similarly contains two references to the "equity contribution contemplated by Article 7.02 of the Plan." [Docket No. 250, Page 11]. For the avoidance of doubt, these provisions shall be modified to refer to Article 7.02(b) and the release in favor of KeyBank shall occur on the Effective Date if Coal Equity fails to make its equity contribution timely.

4.    Western Kentucky Leasing, LLC ("WKL") possesses a claim against the Debtor in the amount of $28,800.00. No proof of claim was filed, however, the Debtor consents to this late filed claim. WKL's claim is an administrative expense claim, and is therefore properly categorized in Class 2. Accordingly, WKL shall be granted an administrative expense claim and be deemed a

3

member of Class 2 for purposes of the Plan.  Such claim shall take the form of the proof of claim attached hereto as **Exhibit A**.  Exhibit D of the Plan provides a list of creditors comprising Class 2.  Accordingly, Exhibit D to the Plan shall be considered amended to include WKL's administrative expense claim as described in this paragraph.  Such revision shall take the form of **Exhibit B** attached hereto.

5.    Exhibit F of the Plan provides a list of pre-Petition Date unexpired contracts and leases which the Debtor is assuming under section 365 of the Bankruptcy Code.  [Docket No. 250-6].  Exhibit F shall be revised to **Exhibit C**, attached hereto, which includes three additional contracts. These contracts were recently extended, by the consent of all the contracting parties, past the effective date.  Additionally, for the avoidance of doubt, all unexpired contracts and leases that have been assumed by the Debtor shall include any and all amendments to each assumed contract or lease.

6.    For the avoidance of doubt, and notwithstanding anything in the Plan to the contrary, the Debtor's professionals are not released from any claim related to gross negligence and willful misconduct.  Additionally, nothing in this Order shall require the Debtor to retain Dentons Bingham Greenebaum LLP in the future.

*[remainder of page intentionally left blank]*

4

Dated: January 9, 2023                    Respectfully submitted,

                                          /s/ April A. Wimberg
                                          James R. Irving
                                          April A. Wimberg
                                          Gina M. Young
                                          DENTONS BINGHAM GREENEBAUM LLP
                                          3500 PNC Tower
                                          101 South Fifth Street
                                          Louisville, Kentucky 40202
                                          Phone: (502) 587-3606
                                          Fax:    (502) 540-2215
                                          Email: james.irving@dentons.com
                                                 april.wimberg@dentons.com
                                                 gina.young@dentons.com

                                          *Counsel to the Debtor*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the Motion was served electronically to those parties receiving CM/ECF pleadings in the Bankruptcy Case, this 9th day of January 2023.  Further, a copy of the foregoing was also sent via over-night delivery or electronically to the following parties:

CCU Coal and Construction, LLC
544 Chestnut Street
Coshocton, OH 43812

Sun Energy Group, LLC
2701 West 1100 South
Huntingburg, IN 47452

Western Kentucky Leasing, LLC
P.O.Box 155
Philpot, KY 42366
Sddw68@gmail.com

Kristian W. Gluck
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas  75201-7932
Counsel to Arcosa LW BR, LLC
kristian.gluck@nortonrosefulbright.com

                                          /s/ April A. Wimberg
                                          *Counsel to the Debtor*

5

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1 _Coal Network, LLC_

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _Eastern_ District of _Kentucky_

Case number _22-10098_

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

_Western Kentucky Leasing, LLC_
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Name _Western Kentucky Leasing, LLC_

Number Street _P.O. Box 155_

City _Philpot_ State _KY_ ZIP Code _42366_

Contact phone _270-281-5005_

Contact email _Sddw68@gmail.com_

Where should payments to the creditor be sent? (if different)

Name _____

Number Street _____

City _____ State _____ ZIP Code _____

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on ___ / ___ / _____
                                                                                            MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

6. **Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?** $ *28,800.00*. Does this amount include interest or other charges?

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

*Coal sold*

9. **Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☒ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

11. **Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01 / 04 / 2023
MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

Name  Jordan M. Lanham
First name   Middle name   Last name

Title  Member

Company  Western Kentucky Leasing, LLC
Identify the corporate servicer as the company if the authorized agent is a servicer

Address  P.O. Box 155
Number  Street

Philpot  KY  42366
City  State  ZIP Code

Contact phone  270-281-5005  Email  sddwb8@gmail.com

# EXHIBIT B

## Plan Exhibit D: Class 2 Creditors

| Creditors Holding Priority Claims | POC Filed | Priority Portion of Claim | Current Claim Amount* |
|---|---|---|---|
| Alliance Coal, LLC | Claim 11 | $ 107,596.96 | $ 76,557.01 |
| Gibson County Coal | Claim 12 | $ 82,812.27 | $ 51,772.32 |
| Blackhawk Coal Sales, LLC | Claim 1 | $ 814,545.00 | $ 602,539.93 |
| Gerald Quitter | Claim 9 | $ 15,150.00 | $ 15,150.00 |
| Haverhill Coke Company | Claim 8 | $ 10,275.23 | $ 8,385.23 |
| Western Kentucky Leasing, LLC | Claim [20] | $ 28,800.00 | $ 28,800.00 |
| Jewell Coke Company LLP | Claim 7 | $ 48,303.41 | $ 44,981.21 |
| Total | | | $ 828,185.69 |

*Priority portion minus critical vendor payments as of 10/28/2022

# EXHIBIT C

Case 22-10098-tnw   Doc 260-3   Filed 01/09/23   Entered 01/09/23 16:02:47   Desc
Exhibit C Revisions to Exhibit F   Page 2 of 2

Plan Exhibit F: Pre-Petition Executory Contracts Assumed

| Party to Agreement | Address | CN Order # | Client Order # (Reference) | Claim Outstanding on Agreement* | 503(b)(9) Claim | Remaining Claim |
|---|---|---|---|---|---|---|
| AEP General Resources Inc. | 1 Riverside Plaza Columbus, OH 43215 | 21069 | 02-40-22-001 Amos | $ 0.00 | $ 0.00 | $ 0.00 |
| Alliance | 1717 South Boulder Avenue Suite 400, Tulsa, OK 74119 | 13271 | Buzzi (Chatt) | $ 324,962.83 | $ 107,596.96 | $ 217,365.87 |
| Arcosa LW BR, LLC** | 201 Industrial Street South Livingston, AL 35470 | SO 21032 | Brooks | $ 0.00 | $ 0.00 | $ 0.00 |
| Arcosa LW BR, LLC** | 201 Industrial Street South Livingston, AL 35470 | SO 20117 | New Orleans | $ 0.00 | $ 0.00 | $ 0.00 |
| Associated Terminals, LLC | 9100 Safety Drive Convent, LA 70723 | PO 13219 | Aggregate Transloading and Storage Agreement | $ 6,035.00 | $ 0.00 | $ 6,035.00 |
| Gibson County (Alliance) | 1717 South Boulder Avenue Suite 400, Tulsa, OK 74119 | PO 13273 | for Arcosa Brooks | $ 145,287.27 | $ 82,812.27 | $ 62,475.00 |
| Louisville Gas and Electric Co. and Kentucky Utilities Co. | 220 West Main Street Louisville, KY 40232 | SO 22006 | LGE-KU J22014 (CCU) | $ 0.00 | $ 0.00 | $ 0.00 |
| Louisville Gas and Electric Co. and Kentucky Utilities Co. | 220 West Main Street Louisville, KY 40232 | SO 22018 | LGE-KU J22016 (Sun) | $ 0.00 | $ 0.00 | $ 0.00 |
| CCU Coal and Construction, LLC | 544 Chestnut Street, Coshocton, OH 43812 | PO 13311 | LGE-KU J22014 (CCU) | $ 0.00 | $ 0.00 | $ 0.00 |
| Sun Energy Group, LLC | 2701 W 1100 South Huntingburg, IN 47542 | PO 13327 | LGE-KU J22016 (Sun) | $ 0.00 | $ 0.00 | $ 0.00 |
| Sun Energy Group, LLC | 2701 W 1100 South Huntingburg, IN 47542 | PO 13178 | LGE-KU J22024 (Sun) | $ 0.00 | $ 0.00 | $ 0.00 |
| Louisville Gas and Electric Co. and Kentucky Utilities Co. | 220 West Main Street Louisville, KY 40232 | Permit Operating Agreement | Purchase Order J20024, dated October 30, 2020 (amended by letter agreements dated December 28, 2021 and April 14, 2022), by and between Sun Energy, Coal Network, and LGE-KU | $ 0.00 | $ 0.00 | $ 0.00 |
| Riverway South, Inc. | P.O. Box 11188 Lexington, KY 40574 | Permit Operating Agreement | | $ 0.00 | $ 0.00 | $ 0.00 |
| Sun Energy Group, LLC | 2701 W 1100 South Huntingburg, IN 47542 | SO 21068 Sun-OVEC marketing Agreement | | $ 0.00 | $ 0.00 | $ 0.00 |

*Claim as of 10/28/2022

**For an abundance of clarity, Arcosa LW BR, LLC's contract, CN Order No. SO 19032 associated with Proof of Claim No. 14, is not being assumed.

22520191.v3
22614161.v2