# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# ASHLAND DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| Coal Network, LLC, | ) Case No. 22-10098-tnw |
| Reorganized Debtor. | ) Hon. Tracey N. Wise |

## THE REORGANIZED DEBTOR'S OBJECTION
## TO CLAIM OF ARCOSA LW BR, LLC [AMENDED CLAIM NO. 14]

Coal Network, LLC (the "Reorganized Debtor" or "Coal Network"), by and through its undersigned counsel, hereby files this objection (the "Objection") to Amended Claim No. 14 (the "Claim") of Arcosa LW BR, LLC ("Arcosa") under section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

**I. Coal Network's Relationship with Arcosa**

2. Coal Network operates as an energy solutions provider, specializing in the trade of coal and blended coal products for the thermal, industrial, metallurgical markets. [Docket No. 24, ¶ 6.] Coal Network enters into contracts with customers to procure coal and arrange for shipping and logistics. [*Id.* at ¶ 7.]

3. On or about October 10, 2019, Coal Network and Arcosa entered into a certain

Sales Order (the "Arcosa Agreement"), attached hereto as **Exhibit A**, which included General Terms and Conditions (the "Arcosa Terms").  The Arcosa Agreement provided that Coal Network supply Arcosa all of its required coal from January 2020 through December 2022 at $107 per short ton to its Livingston, Alabama facility, as provided under the Arcosa Agreement.  Prior to entering into this agreement, Coal Network had discussed and reviewed the need of the Alabama facility, which had two kilns, but only operated one kiln at a the time.

4. When Arcosa entered into the Arcosa Agreement with Coal Network, Arcosa was aware that Coal Network did not itself mine coal but was entering into a separate supply agreement with a miner to obtain the supply.  Coal Network only entered into the Arcosa Agreement after it had negotiated the price and quantity on behalf of Arcosa and entered into a contract with the supplier.

5. Specifically, on October 9, 2019, Coal Network and Cedar Lake Mining, Inc. d/b/a Best Coal, Inc. ("Best Coal") entered into a certain Sales Order (the "Best Coal Agreement"), attached hereto as **Exhibit B**, for Best Coal to directly deliver coal of the quality and quantity described in the Best Coal Agreement to Arcosa.  The Best Coal Agreement also included General Terms and Conditions (the "Best Coal Terms"), which mirror the Arcosa Terms.  Coal Network secured a two-year supply of 31,200 tons per year from Best Coal to supply to Arcosa based on historical data Coal Network had obtained of the amount of coal Arcosa used at its Livingston, Alabama facility.

6. The Arcosa Agreement and Best Coal Agreement are governed by Ohio Law. Arcosa Terms, ¶ 12.0; Best Coal Terms, ¶ 12.0.

7. In the spring of 2022, with the rising demand of coal, Arcosa considered expanding its operations and contacted Coal Network about additional supply for the second kiln based on

the Arcosa Agreement. Coal Network in turn began negotiating with Best Coal on terms for the additional coal.

8. Additionally, Arcosa began contacting Best Coal directly to discuss deliveries as Arcosa preferred to work directly with the mine/producer. *See* email attached hereto as **Exhibit C.**

9. Upon information and belief, the increased prices in coal from 2020 to 2022 made extending the Best Coal Agreement, and even completing the Best Coal Agreement given rising costs, unattractive for Best Coal.

10. Ultimately, Best Coal informed Coal Network that it was going to shutter its operations at the mine that supplied the Arcosa Agreement and would be stopping all deliveries to Arcosa in direct breach of the Best Coal Agreement.

11. Coal Network immediately called Arcosa and began searching for alternate sources for several months while continuing to try to persuade Best Coal to fulfill its contract obligations before it closed its mine. Of course, the Arcosa Agreement explicitly provided that coal would derive from the Best Coal mines, so any changes in the source would require Arcosa's agreement. *See* Arcosa Agreement, p. 1.

12. On June 15, 2022, Arcosa sent a notice of default and intent to terminate to Coal Network (the "Arcosa Default Notice"), attached hereto as **Exhibit D**, and disingenuously attempted to frame the failure to perform on changing market conditions. However, on June 15, 2022, Arcosa had full knowledge that Best Coal had already shut its mine down.

13. As a result, Coal Network contacted Best Coal and requested written confirmation that the mine had closed. On June 21, 2022, Best Coal sent confirmation to Coal Network that it had shut down its mine on June 7, 2022 (the "Best Coal Closure Notice"), attached hereto as

**Exhibit E**.

14. Despite Arcosa's letter, Coal Network continued to work in good faith to find alternate supply terms with Arcosa. *See, e.g.,* emails attached here as **Exhibit F**.

## II. The Chapter 11 Case

15. On August 17, 2022 (the "Petition Date"), Coal Network filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court"), thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case").

16. On August 18, 2022, the Court entered the *Order Setting Status Conference and Other Deadlines in Subchapter V Case* [Docket No. 25], which set the deadline for creditors (other than governmental units) to file proofs of claim as October 26, 2022 (the "General Bar Date"). The deadline for governmental units to file proofs of claim was February 13, 2023 (the "Governmental Bar Date").

17. On October 26, 2022, Arcosa filed its original Claim in the amount of $3,034,521.45 for damages under the Arcosa Agreement, as well as a storage agreement.[1] Arcosa claimed it incurred actual cover damages under the Arcosa Agreement from March 1, 2022 through the Petition Date in the amount of $1,022,956.38 and from August 18, 2022 through September 30, 2022 in the amount of $613,765.71. Arcosa estimated cover damages from October 1, 2022 through December 31, 2022 to be $1,215,000.00. Arcosa also claimed that the coal Coal Network was storing pursuant to the Storage Agreement became contaminated, which resulted in approximately $181,000 in damages.

---

[1] On May 6, 2021, Coal Network and Arcosa entered into a certain Aggregate Transloading and Storage Agreement (the "Storage Agreement") pursuant to which Coal Network agreed to provide services at an aggregate distribution terminal in New Orleans, Louisiana (the "Terminal") in order for Arcosa's customers to pick up lightweight aggregate produced by Arcosa.

4

23231812.v1

18. On November 15, 2022, Coal Network filed the *Debtor's Subchapter V Small Business Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 211] (as amended, the "Plan").

19. Pursuant to the Plan, the Reorganized Debtor sought to assume the Storage Agreement with a proposed cure amount of $0.00. Arcosa informally objected to the proposed cure amount, and the parties resolved the objection, whereby Arcosa consented to the Reorganized Debtor's assumption of the Storage Agreement and Arcosa was entitled to an immediate credit in the amount of $10,000.

20. The Court entered an order confirming the Plan on January 12, 2023 [Docket No. 277] (the "Confirmation Order").

21. On January 14, 2023, Arcosa amended its claim to include (i) the alleged amount of cover damages from March 1, 2022 through the Petition Date in the amount of $1,022,956.38 and from August 18, 2022 through December 31, 2022 in the amount of $2,537,708.22; and (ii) the decreased amount of damages of $10,000 under the Storage Agreement.

22. The total amount of Arcosa's amended Claim was $3,570,664.60.

23. Pursuant to the Reorganized Debtor's request, on February 15, 2023, Arcosa provided additional detail on its cover damages calculation. Per the invoices and calculation spreadsheet provided by Arcosa, attached hereto as **Exhibit G**, the actual alleged total of cover damages is **$2,537,708.22** for March 1, 2022 through December 31, 2022 ($1,022,956.38 in prepetition cover damages and $1,514,751.84 in post-petition cover damages). To be clear, Arcosa's claim double counted the $1,022,956.38 of alleged cover damages from March 1, 2022 to the Petition Date.

24. Under section 5.01 of the Plan, the Reorganized Debtor reserved the right to object to any claims filed "for one year, or until the first claim is first scheduled for a distribution, whichever date is later." Plan, § 5.01.

## RELIEF REQUESTED

25. By this Objection, the Reorganized Debtor seeks disallowance of the Claim under section 502(b)(1) because the force majeure clause in the Arcosa Agreement and the assumptions under which the Arcosa Agreement was entered, as well as section 1302.73 of the Ohio Revised Code, excused Coal Network from performance under the Arcosa Agreement.

26. In the alternative, if the Court finds that Arcosa's Claim should not be disallowed under section 502(b)(1), the Reorganized Debtor seeks reduction of the Claim amount to reflect proper calculation of cover damages pursuant to section 502(b)(1) of the Bankruptcy Code.

## BASIS FOR RELIEF

**I.    Arcosa's Claim Should Be Disallowed Under Section 502(b)(1) of the Bankruptcy Code Pursuant to the Force Majeure Clause of the Arcosa Agreement and Section 1302.73 of the Ohio Revised Code.**

27. Arcosa's Claim should be disallowed in its entirely under section 502(b)(1) of the Bankruptcy Code because Coal Network, through no fault of its own, could not supply the coal as specified in the Arcosa Agreement. Arcosa was aware that the Point of Origin (*i.e.*, Best Coal), as defined in the Arcosa Agreement, was shuttered.

28. Such circumstances were contemplated under paragraph 8.0 of the Arcosa Terms. This was not a case where Coal Network failed to supply coal because it was preferring another customer or because it was unable to afford transport, or any other variable under its control. Coal Network simply had no ability to supply Arcosa with the coal from the Point of Origin as specified in the Arcosa Agreement.

29. Section 502 of the Bankruptcy Code provides that if an objection to a claim is filed,

> [T]he court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, **under any agreement or applicable law** for a reason other than because such claim is contingent or unmatured . . . ."

11 U.S.C. § 502(b)(1) (emphasis added).

30. The Claim is unenforceable against the Reorganized Debtor because Coal Network was excused from performance under paragraph 8.0 of the Arcosa Terms. Paragraph 8.0 covers events constituting force majeure and consequences of such events:

> Force Majeure. If a party is prevented from performing, in whole or in part, any of its obligations to deliver or receive coal at the delivery point due to causes that are beyond the reasonable control and without the fault or negligence of the party affected thereby . . . and such party gives oral notice and full details of the Force Majeure to the other party as soon as reasonably practicable after the occurrence of the Force Majeure (such notice to be confirmed in writing), then during the period of which such party's performance is prevented by such Force Majeure but for no longer period, the obligations of the parties under this Agreement (other than obligations to make payments whether then due or due thereafter) shall be excused to the extent performance is so prevented.
> . . . .
> A change in market conditions (including the ability of Seller to sell coal at a higher price or Buyer or Buyer's customer to buy coal at a lower price), Buyer's inability to economically use or resell the coal, whether or not foreseeable shall not be considered Force Majeure events.

Arcosa Terms, ¶ 8.0.

31. Ohio law further supports the denial of the Claim. "[C]ourts must look to the language of the contract's force majeure provision to determine its applicability." *Haverhill Glen, L.L.C. v. Eric Petroleum Corp.*, 67 N.E. 3d 845, 850 (Ohio Ct. App. 2016); *see also United Arab Shipping Co. v. PB Express, Inc.*, No. 96192, 2011 WL 3860639, *3 (Ohio Ct. App., Sept. 1, 2011) (holding that force majeure clause applied to excuse performance because defendant only failed to

7

23231812.v1

perform because its independent contractors were delayed or not responding to work orders, which was beyond defendant's control).

32. Further, section 1302.73 of the Ohio Revised Code provides that "[d]elay in delivery or non-delivery in whole or in part by a seller who complies with divisions (B) and (C) of this section is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made . . . ." R.C. § 1302.73(A).

33. Nothing in the applicable statutes prevents a contracting party from consciously assuming the risk of a particular contingency. *See generally Teco Coal Corp. v. Orlando Utils. Comm'n*, No. 6:07–CV–444–KKC, 2010 WL 8750622, at *9 (E.D. Ky. Sept. 17, 2010) (discussing a seller's assumption of the risk in the context of a claim of commercial impracticability under KRS § 355.2-615, which mirrors R.C. § 1302.73); *see also Cohen v. North Ridge Farms, Inc.*, 712 F. Supp. 1265, 1270–71 (E.D. Ky. Mar. 29, 1989) (noting that it is possible for a party to a contract to assume the risk of every chance occurrence). Such a provision shifts the risk of loss to the buyer irrespective of any express or implied warranties. *See Roberts v. Lanigan Auto Sales*, 406 S.W.3d 882, 884–85 (Ky. Ct. App. 2013).

34. Here, Arcosa was aware that Best Coal refused to supply coal to Arcosa under the Best Coal Agreement and, in fact, shut its mine. The closure of the Best Coal mine made performance by Coal Network impractical under the Arcosa Agreement and section 1302.73 of the Ohio Revised Code.

35. Arcosa could have included language in the Arcosa Agreement that would have protected it against any actions by Best Coal, but it did not. Because Arcosa agreed that Best Coal's failure to supply coal was not a breach by Coal Network, the provisions of the Arcosa

Agreement and section 1302.73 of the Ohio Revised Code excused Coal Network from performance and preclude Arcosa as a matter of law from recovering any damages allegedly related to Best Coal's refusal to supply it coal. Arcosa Terms, ¶ 8.0; R.C. § 1302.73(A).

II. **If Arcosa's Claim is Not Fully Disallowed Under Section 502 of the Bankruptcy Code, Arcosa's Claim Should Be Reduced to Reflect Proper Calculation of Damages Under Ohio Law.**

36. First, Arcosa's Claim calculation double counts its damages, which is clear on its face. As an initial matter, the Claim amount includes the $10,000 damages under the Storage Agreement, which the Reorganized Debtor already paid. But most significantly, as evidenced by the cover damages calculation provided by Arcosa, the total amount of the cover damages (minus the $10,000 payment) should be **$2,537,708.22**, not $3,560,664.60. *See* Exhibit G.

37. Second, the $2,537,708.22 is further double of the amount of cover damages allowable under the Arcosa Agreement. Section 1302.86 of the Ohio Revised Code provides that "the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." R.C. § 1302.86(A). Further, "[t]he buyer may recover from the seller as damages the difference between the cost of cover and the contract price . . . ." R.C. § 1302.86(B).

38. When Coal Network entered into the Arcosa Agreement, it was based on the representation that Coal Network was providing 100% of Arcosa's coal needs for the existing operations at its Livingston, Alabama facility, which only included one operational kiln. When Arcosa decided to bring a second kiln into operation, Coal Network was not required to supply double the amount of coal that was anticipated under the Arcosa Agreement. Therefore, Arcosa's cover damages should be reduced by half.

9

39. Therefore, if the Court finds that Arcosa has a claim against the Reorganized Debtor and that Coal Network was not exempt from performance under the force majeure clause of the Arcosa Agreement or the impracticability clause of section 1302.73 of the Ohio Revised Code, Arcosa's claim should still be reduced to only include the actual damages it incurred to cover under the terms of the Arcosa Agreement.

## NOTICE

40. **Your claim may be reduced, modified or eliminated. You should read these papers carefully and discuss them with your attorney if you have one.**

41. Notice of this Objection shall be provided to the U.S. Trustee, the subchapter V trustee and Arcosa, or their attorneys.

42. A hearing on this Motion is set for **December 13, 2023 at 10:30 a.m.** in the U.S. Bankruptcy Court, Carl Perkins Federal Building, U.S. District Courtroom, 1405 Greenup Avenue, Suite 204, Ashland, Kentucky.

43. The deadline to file any response to the Objection is December 10, 2023 (the "Response Deadline"). Any response to the Objection must be filed electronically at www.kyeb.uscourts.gov, or delivered, in writing, to the U.S. Bankruptcy Court, Eastern District of Kentucky, 100 East Vine Street, Suite 200, Lexington, Kentucky 40507, with a copy to the Reorganized Debtor's counsel: April A. Wimberg, Dentons Bingham Greenebaum LLP, 3500 PNC Tower, 101 South Fifth Street, Louisville, Kentucky 40202, or april.wimberg@dentons.com, on or before the Response Deadline. If you mail your response to the Bankruptcy Court, you must mail it early enough so the Court will receive it on or before the Response Deadline.

44. The Reorganized Debtor submits that no other notice need be given and that this Objection complies with all notice requirements under the Bankruptcy Rules. This Objection will

23231812.v1

be served by the Reorganized Debtor's counsel according to the certificate of service included herewith.

WHEREFORE, the Reorganized Debtor respectfully requests that the Court enter an order (i) disallowing the Claim, or in the alternative, reducing the Claim, and (ii) granting such further relief as the Court deems just and proper.

Dated: November 10, 2023                     Respectfully submitted,

/s/ April A. Wimberg
April A. Wimberg
Gina M. Young
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Phone: (502) 587-3606
Fax:    (502) 540-2215
Email: april.wimberg@dentons.com
          gina.young@dentons.com

*Counsel to the Reorganized Debtor*

23231812.v1

## CERTIFICATE OF SERVICE

      I certify that on November 10, 2023, the foregoing was served electronically through the Court's ECF system to all person receiving electronic notifications in the Chapter 11 Case. Also, on November 10, 2023, a copy of the foregoing was sent via first class United States Mail to each of the parties at the addresses set forth below:

Arcosa LW BR, LLC
Attn: Just Allen
201 Industrial Street South
Livingston, AL 35470

Kristian W. Gluck
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201

*Counsel to Arcosa LW BR, LLC*

                                                        */s/ April A. Wimberg*
                                                        April A. Wimberg

23231812.v1