**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION**

IN RE:

**COAL NETWORK, LLC**                                                                                          **CASE NO. 22-10098**

**DEBTOR**                                                                                                                **CHAPTER 11**

**MEMORANDUM OPINION AND ORDER PARTIALLY RESOLVING
DEBTOR'S OBJECTION TO CREDITOR'S PROOF OF CLAIM**

Creditor CEMEX Construction Materials Atlantic, LLC filed Proof of Claim No. 15 in Debtor Coal Network, LLC's chapter 11 bankruptcy case. The claim is based on Debtor's purported prepetition breach of the parties' coal supply agreement. Creditor claims $3,881,525.18, and Debtor asserts Creditor improperly calculated the value of its claim. This Order resolves the limited issue of how to calculate the amount Debtor would owe to Creditor for replacement coal.

**I.    Background.**

Debtor "operates as an energy solutions provider, specializing in the trade of coal and blended coal products for the thermal, industrial, metallurgical markets. Coal Network enters into contracts with customers to procure coal and arrange for shipping and logistics." [ECF No. 363 at ¶ 2 (citations omitted).] This is what occurred here. Creditor executed a coal supply agreement with Debtor pursuant to which Debtor would ensure Creditor received coal. [ECF No. 363-2 (the "Agreement").] Coal deliveries to Creditor under the Agreement ceased before its term expired. Creditor purchased coal elsewhere to replace what Debtor failed to supply (the "Replacement Coal"). Creditor filed Proof of Claim No. 15 seeking damages equal to the full

purchase price of the Replacement Coal (the "Full Purchase Price"), plus certain other costs, less a set-off amount due to Debtor.

Before the Court is Debtor's Objection to Creditor's Proof of Claim No. 15 and Creditor's Response thereto. [ECF Nos. 363, 370.] Debtor contends that, under Tennessee's Uniform Commercial Code ("UCC"), Creditor's damages for the Replacement Coal are limited to the difference between the Full Purchase Price and the price Creditor would have paid for the same amount of coal under the Agreement ("Cover Damages"). At a hearing on December 13, 2023, the parties agreed this Court should issue a limited ruling addressing whether the Agreement permits Creditor to claim the Full Purchase Price or only Cover Damages.[1]

## II.     Jurisdiction.

This Court has jurisdiction over this chapter 11 case. 28 U.S.C. § 1334(a). Venue is proper in this District. 28 U.S.C. § 1409. This case and the pending objection are core proceedings. 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## III.     Burden of Proof.

A proof of claim filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes *prima facie* evidence of the validity and amount of the claim. FED. R. BANKR. P. 3001(f). A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). The objecting party has the burden to produce evidence sufficient to overcome the presumption of validity that the Rule creates in the creditor's favor. *In re Clark*, 363 B.R. 819, 823 (Bankr. W.D. Ky. 2007). If the objecting party produces evidence to rebut at least one allegation essential to the claim's legal sufficiency, the burden shifts to the claimant to prove the validity and amount of its claim by a preponderance of the evidence. *Id.*; *see also Tolliver v.*

---

[1] The parties expressly reserved all other arguments set forth in Debtor's Objection and Creditor's Response, including Debtor's defenses to a claim of breach based on force majeure, etc.

*Bank of America* (*In re Tolliver*), Adv. Pro. No. 09-2076, 2012 Bankr. LEXIS 3333, at *46 (Bankr. E.D. Ky. July 19, 2012) (stating the ultimate burden of persuasion always is on the claimant).

### IV. Creditor is Not Entitled Under the Agreement to Recover from Debtor the Full Purchase Price of the Replacement Coal.

#### A. Debtor's argument.

The Agreement's choice of law clause states Tennessee law governs the Agreement. [ECF No. 363-2 at § 16.1.] Debtor contends Creditor's damages are limited based on applicable provisions of Tennessee's UCC. Quoting the UCC, Debtor asserts that "[w]here the seller fails to make delivery . . . the buyer may cancel" the contract and "recover from the seller as damages the difference between the cost of cover [*i.e.* the replacement goods] and the contract price together with any incidental or consequential damages . . . ." [ECF No. 363 at 12 (citing TENN. CODE ANN. §§ 47-2-711, 712).] Debtor advises Creditor purchased 47,099 tons of Replacement Coal at an average price of $103/ton. Under the Agreement, Creditor would have purchased coal from Debtor for $75/ton, a difference of $28/ton. Therefore, Debtor calculates Cover Damages of $1,318,700.

#### B. Creditor's argument.

Creditor contends the Agreement permissibly replaces the UCC cover damages calculation for circumstances in which it may purchase Replacement Coal. [ECF No. 370 at 9 (citing TENN. CODE ANN. § 47-2-719(1)(a) ("the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter . . . .").] Specifically, § 1.2 provides if Debtor is unable to supply coal, Creditor may purchase Replacement Coal, and Debtor is responsible "for any and all costs, including adjusted Price. . . incurred by [Creditor] in obtaining the Replacement Coal."

3

[ECF No. 363-2 at § 1.2.]   Under Creditor's theory, "any and all costs" means the full amount it paid for the Replacement Coal, not Cover Damages.

### C. Tennessee law on contract construction.

As no party challenges the Agreement's choice of law provision, the Court will apply Tennessee law to resolve the parties' dispute. *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 398 (6th Cir. 2000) (stating Kentucky courts recognize and honor choice of law provisions, particularly in UCC transactions, unless certain exceptions apply).   Tennessee courts apply rules of contract interpretation with the sole objective of effecting "justice between the parties, by enforcing a performance of their agreement according to the sense in which they mutually understood it at the time it was made.   Common sense must be applied to each case, rather than any technical rules of construction." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 688 (Tenn. 2019) (citation omitted).   "[C]ourts must interpret contracts so as to ascertain and give effect to the intent of the contracting parties consistent with legal principles." *Id.*   To determine the parties' intent, courts "should focus on the four corners of the contract, the circumstances in which the contract was made, and the parties' actions in carrying out the contract."   *Id.* at 692.

"A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous . . . ." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002).   Language in a contract is ambiguous when it is "susceptible to more than one reasonable interpretation." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).   "If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes." *Planters Gin Co.*, 78 S.W.3d at 890.   Where "[t]he parties do not dispute that a valid, enforceable, and unambiguous written contract existed between them"

4

and the court likewise finds the agreement unambiguous, then the court "must look no further than the four corners of that document . . . ." *Tennessee Bank & Tr. v. Boruff*, M2021-00552-COA-R3-CV, 2022 WL 781048, at *4 (Tenn. Ct. App. Mar. 15, 2022).

### D. The Agreement does not support Creditor's interpretation that it is entitled to recover from Debtor the Full Purchase Price.

Debtor has identified a legitimate dispute as to how to calculate damages for breach of the Agreement. This rebuts the presumption of validity afforded to Creditor's proof of claim and places the burden of persuasion on Creditor to convince the Court that its interpretation of the Agreement is correct.

Creditor contends Tennessee's UCC allows parties to contract for their own remedies and damages calculations, TENN. CODE ANN. § 47-2-719(1)(a), and that the Agreement has a provision supplying Creditor's remedy if Debtor fails to supply coal. Section 1.2 of the Agreement states, in relevant part, that "[i]f [Debtor] is unwilling or unable to supply the Estimated Quantity . . . , then [Debtor] agrees that (a) [Creditor] shall have the right to obtain" Replacement Coal from a different source without penalty. [ECF No. 363-2 at § 1.2.] Once Creditor purchases the Replacement Coal, Debtor "shall . . . reimburse [Creditor] for any and all costs, including the adjusted Price (as defined in § 2.2 of this Agreement), incurred by [Creditor] in obtaining the Replacement Coal." [*Id.*]

Creditor construes Debtor's agreement to "reimburse [Creditor] for any and all costs" to mean Debtor promised to reimburse Creditor for the Full Purchase Price for Replacement Coal. [*Id.*] The Court disagrees. Section 1.2 does not define the term "any and all costs." Thus, the Court must look to other provisions of the document to ascertain the meaning of this phrase because "'[a] contract's provisions must be interpreted in the context of the entire contract, viewed from beginning to end and all its terms must pass in review, for one clause may modify,

5

limit or illustrate another.'" *Holmes v. LM Ins. Corp.*, No. 3:19-CV-00466, 2023 WL 6979239, at *3 (M.D. Tenn. Oct. 23, 2023) (quoting *D & E Const. Co. v. Robert J. Denley Co.*, 38 S.W.3d 513, 519 (Tenn. 2001)).

In fact, § 13.1 limits or illustrates the meaning of the term "costs."[2] It provides Debtor

> agrees to indemnify, defend and hold [Creditor] harmless from any and all losses, liabilities, damages, claims . . . costs, expenses (including, without limitation, reasonable attorneys' fees), penalties, fines and judgments of any nature whatsoever (collectively "losses"), caused by or arising out of . . . any [] breach of this Agreement by [Debtor].

[ECF No. 363-2 at § 13.1.]

The parties chose to separately itemize each type of foreseeable financial remedy in § 13.1, leading to the conclusion that the parties, like courts, understand there to be differences between each remedy. *See, e.g.*, *Sullivan Cnty., Tenn. V. Home Indem. Co.*, 925 F.2d 152, 153 (6th Cir. 1991) ("In the language of the law . . . there is a clear distinction between 'costs' and 'damages.'"). The purposeful listing of multiple remedies including "costs" in § 13.1, and the winnowing of what would be due for a breach under § 1.2 to any and all costs"—but not damages or expenses or losses—evidences the parties did not agree Debtor would pay the Full Purchase Price for a breach under § 1.2. Stated differently, limiting Creditor's recovery for a breach of § 1.2 only to "any and all costs," when the parties understood multiple other financial remedies to exist, belies the argument the parties agreed Creditor would receive a windfall— *i.e.*, that Debtor would pay for all of Creditor's coal if Debtor could not supply it, such that Creditor would receive free coal.

---

[2] While § 13.1 is beneath the title "SECTION 13: INDEMNITY", § 16.2 states "[t]he paragraph headings appearing in this Agreement are for convenience only and shall not affect the meaning or interpretation of this Agreement." [ECF No. 363-2 at § 16.2.]

6

It would create an internal conflict within the Agreement—as well as defy the rules of contract interpretation and common sense—to find the parties intended "costs" to have an expansive meaning in § 1.2 and a narrower meaning in § 13.1 as a remedy distinct from losses, damages, and expenses given the Agreement does not state the parties intended the word to have a different meaning in each provision. *See, e.g.*, *N. Canton Bd. of Educ. v. Am. Tel. & Tel., Inc.*, 822 F. App'x 324, 330 (6th Cir. 2020) ("Courts presume that parties intend for the same word to have the same meaning throughout a contract.") (citations omitted); *Bales & Learn v. New Amsterdam Casualty Co.*, 5 Tenn. App. 181, 187 (Tenn. Ct. App. 1927) ("Where the same word was twice used in one clause of a contract, it ought to be construed, so far as the subject-matter permits, as having the same meaning in both places."); *Cone v. Northfield Ins. Co.*, Case No. 13-cv-15096, 2015 U.S. Dist. LEXIS 18484, *22-23 (E.D. Mich. Feb. 17, 2015) (collecting cases explaining it is a "cardinal rule that terms in a contract be given the same meaning throughout the instrument") (citations omitted). Holding the reference in § 1.2 to "any and all costs" for a specific kind of breach of the Agreement does not mean "all amounts expended to acquire Replacement Coal" "gives meaning and effect to every provision" that uses the term "costs." *See Holmes*, 2023 WL 6979239, at *3 (finding "[a]n interpretation giving meaning and effect to every provision is favored over one leaving a portion of the instrument useless or inexplicable.").

Debtor contends the Court should simply apply Tennessee's UCC and award Cover Damages. [ECF No. 363 at ¶¶ 46-50.] Debtor's counsel also argued at the hearing the term "adjusted Price" as used in § 1.2 clarifies the meaning of "any and all costs" and shows the parties agreed to limit Creditor's remedy to Cover Damages if Debtor failed to supply contracted coal. The Court disagrees with this reading of § 1.2. The term "adjusted Price" in § 1.2 is followed by the parenthetical "(as defined in Section 2.2 of this Agreement)." [*Id*.] Section 2.2

explains how the contract price of supplied coal may be adjusted if quality issues exist. It does not state or suggest the damages available to Creditor if it must buy replacement coal are limited to the difference between the contract price and the price of the replacement coal.

Nevertheless, the Court agrees with Debtor that Creditor's remedy for purchase of the Replacement Coal is Cover Damages under Tennessee's UCC. The Agreement does not define the term "all costs" for purposes of the remedy provided in § 1.2, and neither party's view of what "all costs" means in § 1.2 draws support from tenets of contract interpretation. The Agreement is for a transaction in goods involving a merchant, and thus the UCC governs the Agreement. TENN. CODE ANN. § 47-2-102. As Creditor's remedy under § 1.2 lacks precision because the parties failed to define a key term, and the Agreement does not otherwise provide specific guidance on the term's meaning, Tennessee's UCC fills in to provide the remedy. *Aidamark, Inc. v. Roll Forming Corp.*, 580 F. App'x 408, 413 (6th Cir. 2014) (stating the UCC is used "to fill in the gaps" of contracts for the sale of goods). Tennessee's UCC has specific provisions providing a remedy for the situation presented. TENN. CODE ANN. §§ 47-2-711, 712. Therefore, in the absence of a clear alternative remedy in the Agreement, the UCC Cover Damages remedy applies.

### V. Conclusion.

In sum, Creditor has not satisfied its burden to establish the value of its claim is set forth correctly in Proof of Claim No. 15. Reading the Agreement as a whole, the parties did not intend Creditor to recover the Full Purchase Price of Replacement Coal following Debtor's breach of the Agreement. As the parties did not intend Creditor's interpretation of § 1.2 and the section lacks clarity, Tennessee's applicable UCC provisions are incorporated into the Agreement to fill the gap. For these reasons, IT IS ORDERED that:

1. Creditor may only claim Cover Damages for any Replacement Coal it purchased upon Debtor's failure to supply coal pursuant to the Agreement.

2. Creditor shall amend its proof of claim within 14 days to be consistent herewith.

9

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Friday, December 22, 2023**
**(tnw)**